1998-NMCA-160

967 P.2d 465

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Brenda GARDNER, Defendant–Appellant.**

**No. 18,949.**

Court of Appeals of New Mexico.

Sept. 11, 1998.

Certiorari Denied, No. 25,398, Oct. 26, 1998.

Tom Udall, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

PICKARD, J.

{1} In 1993, the Implied Consent Act was amended so that motor vehicle operators are deemed to consent to blood or breath alcohol tests that are "approved by the scien-tific laboratory division of the department of health." NMSA 1978, § 66–8–107(A) (1993). Department of Health Regulation 12.1.1 requires breath samples to be collected only after "the subject has been under continuous observation for at least 20 minutes prior to collection of the first breath sample." 7 NMAC 33.2.12.12.2.1 (Oct. 31, 1996). The question we address in this case is whether a breath alcohol test taken after the Defendant was continuously observed for only fifteen minutes is admissible in her criminal case for driving while intoxicated (DWI). We hold that it is not and reverse.

{2} Defendant raises two other issues on appeal in addition to the issue concerning the admission of the test results. We do not address the prosecutor-misconduct issue because it is not certain to arise on retrial. We summarily answer the issue concerning alleged error in the bind-over order for felony DWI when there was no proof of prior DWI convictions presented to the magistrate: "a probable cause showing regarding the existence of three prior [DWI] convictions was not required in order to support jurisdiction in the district court." *State v. Anaya*, 1997–NMSC–010, ¶ 25, 123 N.M. 14, 933 P.2d 223. Moreover, because "proof of three such convictions does not constitute an element of felony DWI," *id.*, we find nothing in Rule 6–202(C) NMRA 1998 that would prohibit the magistrate from entering the bind-over order.

## FACTS

{3} Defendant's vehicle was stopped for erratic driving. Upon observing classic signs of intoxication, the officer placed Defendant under arrest and transported her to the Sheriff's Office for a breathalyzer test. The officer observed Defendant while she was in his patrol car and again after they arrived at the Sheriff's office. At the station, however, Defendant left the officer's observation when she was permitted to use the restroom. The officer testified that this happened about fifteen to twenty minutes before the test. When Defendant returned from the restroom, the officer asked her if she was okay, and Defendant did not indicate that anything was wrong. The officer claimed in his testi-

mony that Defendant was within his observation the entire twenty minutes before the test despite Defendant leaving to go to the bathroom. Nonetheless, the officer admitted that he did not know whether Defendant burped, belched, or vomited while she was in the bathroom. The officer explained that the continuous observation requirement is important to ensure that DWI suspects do not burp, belch, or vomit prior to the administration of the test, as that can lead to an erroneous test result. Defendant's test results showed a breath alcohol concentration of .19, .18, and .18.

{4} At the time the test results were offered into evidence at trial, defense counsel objected that they were inadmissible. Specifically, defense counsel argued that the continuous observation period required by statute and regulation was not met when Defendant was allowed to use the restroom unaccompanied by the officer within twenty minutes prior to the administration of the test. The trial court overruled the objection, the results were admitted into evidence, and Defendant was convicted. On appeal, Defendant contends that the test results were improperly admitted into evidence because the officer failed to strictly comply with the twenty-minute continuous observation period by permitting Defendant to be out of his presence for the time it took for her to use the restroom, which may have been as close as fifteen minutes before the test.

## DISCUSSION

▮▮▮▮ {5} We hold that the test results were improperly admitted into evidence due to the violation, by as much as five minutes, of the twenty-minute continuous observation period. We review rulings upon the admission or exclusion of evidence under an abuse of discretion standard, *see State v. Hoeffel*, 112 N.M. 358, 361, 815 P.2d 654, 657 (Ct.App. 1991), but when there is no evidence that necessary foundational requirements are met, an abuse of discretion occurs. Our decision is based first and foremost on the statutory structure of the DWI statutes which, since the 1993 amendments, expressly provide that blood or breath alcohol test results may be introduced into evidence if they are performed in accordance with state regula-

tions; these regulations require a twenty-minute observation period prior to collecting a breath sample. Our decision is also based, in part, on (1) distinguishing a prior case decided before the 1993 amendments to the DWI laws; (2) distinguishing arguably similar cases which, in fact, involved different circumstances; and (3) distinguishing a recent case in which we applied the doctrine of substantial compliance. We review each of these matters in turn. We additionally hold that the error was not harmless.

## I. *Statutory Structure*

{6} Department of Health Regulation 12.1.1 states:

Two breath samples shall be collected and/or analyzed by certified Operators or Key Operators only, and shall be end expiratory in composition. Breath shall be collected only after the subject has been under continuous observation for at least 20 minutes prior to collection of the first breath sample. If during this time the subject regurgitates or introduces any foreign substance suspected of containing alcohol into his mouth or nose, another 20 minutes observation period must be initiated. The two breath samples shall be taken not more than 15 minutes apart. If the difference in the results of the two samples exceeds 0.02 grams per 210 liters (BrAC), a third sample of breath or blood shall be collected and analyzed. If the subject declines or is physically incapable of consent for the second and/or third samples, it shall be permissible to collect and/or analyze fewer samples.

7 NMAC 33.2.12.12.2.1. This regulation was promulgated pursuant to the authority of NMSA 1978, § 24–1–22 (1981), which allows the "scientific laboratory division of the health and environment department [department of health]" to promulgate and approve methods of testing people under the influence of alcohol or drugs and to establish criteria for testing methodology and collection of breath samples.

{7} If Section 24–1–22 were the only statute touching on the matter at issue in this case, it may be that suppression of the results of Defendant's breath alcohol tests

taken in violation of the regulation might not be required. However, the Implied Consent Act and the DWI statutes underwent substantial revision in 1993 as part of a comprehensive legislative effort to address this state's DWI problem. *See* 1993 N.M.Laws, ch. 66 (amending, *inter alia,* NMSA 1978, §§ 66–8–102, –102.1, –107, & –109 to –112 (1993)). All parts of this statute must be read together and each part must be considered in relation to the others to determine whether substantial compliance with the twenty-minute observation period is sufficient. *See Citizens for Incorporation, Inc. v. Board of County Comm'rs,* 115 N.M. 710, 717, 858 P.2d 86, 93 (Ct.App.1993).

{8} Section 66–8–110(A) provides that the "results of a test *performed pursuant to the Implied Consent Act* ... may be introduced into evidence in any civil action or criminal action arising out of the acts alleged to have been committed by the person tested[.]" (Emphasis added.) Prior to its amendment in 1993, the Implied Consent Act, Section 66–8–107(B), stated that a "test of blood or breath shall be administered at the direction of a law enforcement officer" when there was probable cause to believe a person was driving while intoxicated. NMSA 1978, § 66–8–107(B) (1985). Following its amendment, Section 66–8–107(B) states that a "test of blood or breath or both, *approved by the scientific laboratory division of the department of health pursuant to the provisions of Section 24–1–22 NMSA 1978,* shall be administered at the direction of a law enforcement officer" when there is probable cause to believe a person was driving while intoxicated. (Emphasis added.) Similarly, Section 66–8–107(A) provided, before its amendment, that persons operating motor vehicles within the state were deemed to have consented to tests as determined by law enforcement officers. However, after the 1993 amendment, that same section limited the tests to which drivers are deemed to consent to those approved by the department of health. *Compare* § 66–8–107(A) (1985) *with* § 66–8–107(A) (1993).

{9} Thus, following the 1993 amendments to the DWI laws, in order for persons to be deemed to have given their consent to blood or breath alcohol tests, and in order for those test results to be admitted into evidence, the tests must have been taken in accordance with department of health regulations. In the case of breath alcohol tests, these regulations include the twenty-minute waiting period of Regulation 12.1.1. In this case, Regulation 12.1.1 was not complied with and thus, according to the statutes, it appears that Defendant's breath alcohol test results should not have been admitted into evidence.

## II. *State v. Watkins*

{10} In *State v. Watkins,* 104 N.M. 561, 563–64, 724 P.2d 769, 771–72 (Ct.App.1986), we held that various failures to comply with department of health regulations, including what we described as "problems" with the twenty-minute waiting period, went to the weight, not the admissibility, of the breath test. At that time, prior to 1993, we were concerned solely with Section 24–1–22, and we held that the legislature, in enacting that statute, did not intend to create a statutory right to certain testing procedures. *Id.* at 564, 724 P.2d at 772. Nor, we noted, did the legislature intend to make compliance with Section 24–1–22 mandatory. *Id.*

{11} Now, however, we are faced with DWI statutes that have been substantially amended. The addition of language concerning breath and blood alcohol testing in accordance with department of health regulations in the implied-consent statute, § 66–8–107, as well as the admissibility-of-evidence statute, § 66–8–110, convinces us that the legislature intended that compliance with these regulations would be a condition precedent to admissibility. In this regard, we join all the states that have been called to our attention by the briefs and hold that failure to comply with the applicable waiting period precludes the admission of breath alcohol test results into evidence. *See Department of Highway Safety & Motor Vehicles v. Farley,* 633 So.2d 69 (Fla.Dist.Ct.App.1994); *State v. Kirn,* 70 Haw. 206, 767 P.2d 1238 (Haw.1989); *People v. Boughner,* 209 Mich. App. 397, 531 N.W.2d 746 (Mich.Ct.App. 1995); *State v. Cash,* 3 Neb.App. 319, 526 N.W.2d 447 (Neb.Ct.App.1995); *State v. McCaslin,* 894 S.W.2d 310 (Tenn.Crim.App.

1994); *State v. Kost,* 785 S.W.2d 936 (Tex.Ct. App.1990). *See generally* Debra T. Landis, *Necessity and Sufficiency of Proof that Tests of Blood Alcohol Concentration Were Conducted in Conformance with Prescribed Methods,* 96 A.L.R.3d 745 § 9 (1980).

{12}   The purpose of complying with the waiting period requirements for breath alcohol tests is to ensure the accuracy of these tests. *See Boughner,* 531 N.W.2d at 747. As stated in *State v. Baker,* 56 Wash.2d 846, 355 P.2d 806, 811 (Wash.1960) (en banc), a "subject must be kept under observation for [the requisite period of time] to insure that he has not taken anything alcoholic to drink during that period and to allow any alcohol present in the mouth to be absorbed by the skin." When there is not strict compliance with the waiting-period rule, the results of the breath alcohol tests are considered sufficiently questionable as to preclude their admissibility. *See Boughner,* 531 N.W.2d at 747. Thus, when these administrative requirements are not complied with, the State has failed to lay a proper foundation of accuracy for admission. *See Baker,* 355 P.2d at 809–810. There is no dispute in this case that the twenty-minute observation period was not complied with when Defendant was allowed to go to the bathroom unobserved between fifteen and twenty minutes before the test.

### III. *State v. Jones and State v. Bearly*

{13}   Our decision today raises a question whether our holding will be consistent with our recent case of *State v. Jones,* 1998–NMCA–076, ¶¶ 29–32, 125 N.M. 556, 964 P.2d 117, relying on *State v. Bearly,* 112 N.M. 50, 53–54, 811 P.2d 83, 86–87 (Ct.App.1991). In both *Jones* and *Bearly,* we held that violations of the DWI statutes by the state or its agents did not require suppression of test results. *Jones* involved the failure to permit the defendant to take an independent test by the doctor of his choice. *See Jones,* 1998–NMCA–076, ¶ 13, 125 N.M. 556, 964 P.2d 117. *Bearly* involved a violation of the statute allowing the defendant to make phone calls following arrest. *See Bearly,* 112 N.M. at 52, 811 P.2d at 85. In both cases, we held that the defendants had to show prejudice from the statutory violations before suppres-

sion of the test results or setting aside the convictions were required. *See Jones,* 1998–NMCA–076, ¶¶ 29–30, 125 N.M. 556, 964 P.2d 117, and *Bearly,* 112 N.M. at 54, 811 P.2d at 87.

{14}   In this case, we hold that no prejudice need be shown. That is because the requirement of compliance with applicable regulations is explicitly a part of the statute that permits the tests into evidence. *See* §§ 66–8–107(A) & (B) & –110(A). Neither *Jones* nor *Bearly* involved the same statutory structure as in this case. In fact, the statute in *Bearly* was not even part of the DWI statutes. Moreover, in *Jones,* the statute at issue simply allowed the defendant to take an additional breath or blood alcohol test by a person of the defendant's own choosing. The statute said nothing about the remedy if the additional test was not allowed. *See* § 66–8–109(B).

{15}   We are supported in choosing the remedy of suppression in this case by the legislature's having enacted the 1993 amendments aware of *Watkins* and also aware of one other decision, *State v.. Wilson,* 92 N.M. 54, 582 P.2d 826 (Ct.App.1978), in which we held that the appropriate remedy was suppression. *See Bettini v. City of Las Cruces,* 82 N.M. 633, 635, 485 P.2d 967, 969 (1971) (legislature is presumed to be informed of existing law). Thus, when the legislature used the language that it did in 1993, it would expect that courts would suppress evidence if there was not implied consent for the test. In this case, as discussed previously, throughout the statutory framework, there is language that the blood and breath alcohol tests must be taken in accordance with applicable regulations, that people do not consent to take these tests except in accordance with the state regulations, and that blood or breath alcohol tests conducted in accordance with the regulations may be introduced into evidence. Thus, here, as in *Wilson,* the violation of Defendant's statutory right requires that we suppress the breath alcohol evidence.

### IV. *State v. Rivera and Substantial Compliance*

{16}   The State urges that we apply the doctrine of substantial compliance to this

case and hold that there was sufficient evidence to support the district court's decision to admit the breath alcohol test results. The State explains that the officer substantially complied with the state regulations by observing Defendant for forty minutes prior to the test, during which time he did not see her belch, vomit, or burp. Moreover, the State argues that our application of the doctrine of substantial compliance in *State v. Rivera,* 1997–NMCA–102, ¶ 5, 124 N.M. 211, 947 P.2d 168, indicates our approval of that doctrine in situations such as this where officers almost, but not quite, fulfill the requirements of the department of health regulations.

{17} In *Rivera,* the defendant raised a sufficiency of the evidence issue because, among other things, there was insufficient evidence that he was continuously observed for twenty minutes as required by the state regulations. *See id.* ¶ 4, 124 N.M. 211, 947 P.2d 168. Nevertheless, in *Rivera,* we noted that the purpose of observing the defendant was to ensure that he did not do anything to compromise the eventual breath alcohol test. *Id.* ¶ 5, 124 N.M. 211, 947 P.2d 168. There was also testimony in *Rivera* that the officer satisfied this purpose by sitting in the car with the defendant while transporting him to the detention center. *Id.* Based on this testimony, we concluded that the defendant's contentions went to the weight of the evidence, not its admissibility, and did not mean that the evidence supporting the conviction was insufficient as a matter of law. *Id.*

{18} While we do not retreat from *Rivera,* we point out that in this case there was no testimony that the purpose of the regulation was satisfied. In fact, the officer here testified that he did not observe Defendant while he was having the car towed, while Defendant was in the back seat of his vehicle and he was driving it, and while she used the restroom. Moreover, it appeared that the twenty-minute period was satisfied in *Rivera.* Here, the officer admitted that Defendant was allowed to use the restroom unobserved at a time that could have been only fifteen minutes before the test.

{19} When the regulation requires twenty minutes, we are reluctant to say that

fifteen minutes will be sufficient. *See Lane v. Lane,* 1996–NMCA–023, ¶ 18, 121 N.M. 414, 912 P.2d 290. In addition, we are impressed that in none of the cases cited to us by the State did a court hold that less than the required number of minutes would be substantial compliance with the requirements. In fact, these cases were similar to *Rivera* in that they primarily involved the question of whether the continuous-observation requirement could be met by being in the subject's presence and having the subject in peripheral vision or in front of the officer while the officer filled out paperwork or prepared the breath-testing machine for operation. *See, e.g., Glasmann v. State Dep't of Revenue,* 719 P.2d 1096 (Colo.Ct.App.1986); *State v. Smith,* 16 Conn.App. 156, 547 A.2d 69 (Conn.App.Ct.1988); *State v. Remsburg,* 126 Idaho 338, 882 P.2d 993 (Idaho Ct.App. 1994); *In re Ramos,* 155 Ill.App.3d 374, 108 Ill.Dec. 323, 508 N.E.2d 484 (Ill.App.Ct.1987); *State v. Balderson,* 138 Or.App. 531, 910 P.2d 1138 (Or.Ct.App.1996) (en banc). In *Williams v. State,* 884 P.2d 167, 173 (Alaska Ct.App.1994), while there was no specific requirement for waiting a certain period of time after a "mouth alcohol" reading was registered, the officer did wait the required amount of time for the first test, and there was evidence that the officer waited the usual amount of time it takes for mouth alcohol to disappear before administering the second test. In *City of Elyria v. Conley,* 99 Ohio App.3d 40, 649 N.E.2d 1277 (Ohio Ct.App. 1994), the only case cited by the State involving less than the required amount of time, the issue was whether two officers' observation times could be added together to arrive at the required amount of time; because the subject was under observation for the entire amount of time, the court upheld the admission of the test results.

{20} Thus, we do not find support in either the out-of-state cases or in the evidence in this case for relaxing the twenty-minute requirement to a period of fifteen minutes. We do not hold that substantial compliance might not be sufficient if the matter at issue was the continuous observation requirement and the officer glanced down periodically to do paperwork, but testified

that he or she would have been able to tell if the defendant "regurgitate[d] or introduce[d] any foreign substance suspected of containing alcohol into his mouth or nose," as required by Regulation 12.2.1. That issue is not in front of us. Here, we are concerned with whether a fifteen-minute observation period is sufficient when the regulations require twenty minutes. We hold that it is not.

{21} The State argues that the error of admitting the test results was harmless because there was overwhelming evidence that Defendant was driving while intoxicated. The State points to her erratic driving; her appearance, including the smell of alcohol, bloodshot eyes, and slurred speech; and her failing several field sobriety tests. However, we agree with the analysis in *McCaslin*, 894 S.W.2d at 312, that when the only scientific evidence presented at trial was admitted in error, the court cannot say that the effect is harmless.

## CONCLUSION

{22} Defendant's conviction for DWI is reversed, and this case is remanded for a new trial.

{23} **IT IS SO ORDERED.**

HARTZ, C.J., and DONNELLY, J., concur.