**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-063**

**Filing Date: June 3, 2010**

**Docket No. 28,829**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellant,**

**v.**

**PETER FRANCISCO YBARRA,**

> **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mike Murphy, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellant

Kelly O'Connell
Las Cruces, NM

for Appellee

**OPINION**

**KENNEDY, Judge.**

**{1}**     In this DWI case, Defendant consented to a chemical test and provided one sample that resulted in a reported breath alcohol value. Because the officer believed that Defendant may have had physical difficulty completing the breath test, the officer terminated the test, and used the result of the single completed sample to prove Defendant's intoxication. The applicable standard requires that a test subject be "physically incapable of consent" before the test may be terminated. Terminating a breath test and using the result from the single completed sample must be based on more than a police officer's belief that the willing test subject has physical difficulties blowing into the machine. Applying the clear language of the regulation, we hold that the circumstances of this case do not, under the Scientific Laboratory Division (SLD) of the State Department of Health  regulation, justify the

officer's termination of the test.  When a willing subject provides breath samples, it is incumbent upon the officer administering the test to comply with applicable regulations. The district court granted Defendant's motion to suppress the breath tests because it concluded that the police officer failed to comply with 7.33.2.12(B)(1) NMAC (3-14-01) (requiring multiple breath samples be taken unless the test subject "declines or is physically incapable of *consent*").  Concluding that the district court is correct, we affirm.

**BACKGROUND**

**{2}**     On August 18, 2007, after being arrested for *inter alia*, driving while intoxicated, Defendant consented to take a breath test.  The circumstances of the arrest and other pre-test events are not at issue here.  Defendant was advised of his rights under the Implied Consent Act (the Act), NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007), and the arresting officer directed that Defendant submit to a breath alcohol test.  Section 66-8-107(B) (stating that a test of breath, blood or both shall be administered at the direction of a law enforcement officer).

**{3}**     The first sample provided by Defendant registered .22 grams of alcohol in a sample of 210 liters of breath.  Defendant seemed to have difficulty giving enough breath on the first test.  After indicating he had asthma and requesting the use of his inhaler, the officer was concerned whether Defendant would be able to give a second sample.  Defendant was therefore allowed to use his Albuterol inhaler prior to the second test.  As Defendant was handcuffed and unable to hold the inhaler himself, the officer held the inhaler up for Defendant to use.  The officer administered two doses from the inhaler directly to Defendant.

**{4}**     Approximately two minutes later, Defendant provided a second sample, which resulted in the breath machine registering an error message indicating "Range Exceeded." The officer testified that he believes such a reading appears when the amount of alcohol in the breath sample exceeds the machine's measurement capability, which is .40 grams of alcohol per 210 liters of breath.  The officer testified that at that time, he decided to discontinue testing and concluded that he had gathered enough evidence to prove Defendant's level of intoxication.  The officer testified that the results of the first test, along with Defendant's admission (not at issue in this case) that he had consumed ten beers, was enough.  The officer further stated he did not consider re-starting the breath test sequence and concluded at that time that a blood draw was unnecessary.

**{5}**     Prior to trial, Defendant filed a motion to suppress the breath tests.  Specifically, he argued that a complete breath test was never conducted, and as such, the arresting officer failed to strictly comply with 7.33.2.12(B)(1) NMAC as required under *State v. Gardner*, 1998-NMCA-160, 126 N.M. 125, 967 P.2d 465.  After considering the evidence, which consisted primarily of testimony from the arresting officer and Defendant, the district court granted Defendant's motion.  It found that the "Range Exceeded" result on the second test was most likely the result of the inhaler and that the police officer could have either begun another breath test or provided a blood test, but chose to do neither.  Likewise, we infer from

2

the district court's order that it concluded that Defendant fully consented to testing, and because 7.33.2.12(B)(1) NMAC requires strict compliance, any results must be suppressed. We observe that the court made no finding as to whether Defendant could have provided a sample without the use of his inhaler.

**{6}** On appeal, the State argues that the court improperly suppressed the breath test. It claims that the arresting officer complied with the requirements of 7.33.2.12(B)(1) NMAC: (1) because one sample was sufficient after Defendant demonstrated he was physically incapable of submitting another, and (2) because the arresting officer made a good faith effort to take and analyze two samples. We discuss each contention below.

## DISCUSSION

### A.      Standard of Review

**{7}** Motions to suppress present mixed questions of law and fact. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We view the facts in the light most favorable to the judgment below and determine whether the district court's factual determinations are supported by substantial evidence. *State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct. App. 1983). "The interpretation of an administrative regulation is a question of law that we review de novo." *State v. Willie*, 2009-NMSC-037, ¶ 9, 146 N.M. 481, 212 P.3d 369. There is no difference between our review of the Administrative Code and statutes, and we determine and effectuate the intention of the administrative agency using the plain language of the regulation as the primary indicator of its intent. *Id.* "When the language in a statute is clear and unambiguous, we give effect to that language and refrain from further statutory interpretation." *State v. Duhon*, 2005-NMCA-120, ¶ 10, 138 N.M. 466, 122 P.3d 50. Statutes defining criminal conduct must be strictly construed. *Santillanes v. State*, 115 N.M. 215, 221, 849 P.2d 358, 364 (1993).

### B.      The Arresting Officer Failed to Comply With 7.33.2.12(B)(1) NMAC

### 1.      Statutes and Regulations

**{8}** The Act provides that any person who holds a New Mexico driver's license impliedly consents to chemical testing of "his breath or blood or both" administered for the purpose of determining intoxication. Section 66-8-107(A). A driver may refuse to consent to such testing, but the penalty for doing so is the revocation of the driver's license "for a period of one year or until all conditions for license reinstatement are met, whichever is later." Section 66-8-111(A), (B). If the driver "is dead, unconscious or otherwise in a condition rendering him *incapable of refusal*," police retain the authority to perform chemical testing, and the driver may not be deemed to have "withdrawn the consent" under the Act. Section 66-8-108 (emphasis added). Incapacity to refuse a test leaves a citizen's implied consent to be tested fully operative. Similarly, once a test subject consents to be tested, SLD has provided that he shall be tested unless physically incapable of consenting. The words are

not meaningless and promote the operation of chemical testing under the Act.

**{9}**     Where a driver consents to testing, the police must administer any tests in accordance with regulations approved by SLD.  Section 66-8-107(A); *see State v. Vaughn*, 2005-NMCA-076, ¶ 35, 137 N.M. 674, 114 P.3d 354 (describing SLD's responsibility for test development).  SLD "is authorized to promulgate and approve satisfactory techniques or methods to test persons believed to be operating a motor vehicle . . . under the influence of drugs or alcohol." NMSA 1978, Section 24-1-22(A) (2003). SLD promulgated a regulation governing the conduct of breath tests. 7.33.2.12(B)(1) NMAC.  The regulation provides:

> (1)     Two breath samples shall be collected and analyzed by certified Operators or Key Operators only, and shall be end expiratory in composition.  Breath shall be collected only after the Operator or Key Operator has ascertained that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample.  If during this time the subject eats, drinks or smokes anything, another 20 minutes deprivation period must be initiated.  The two breath samples shall be taken not more than 15 minutes apart.  If the difference in the results of the two samples exceeds 0.02 grams per 210 liters (BrAC), a third sample of breath or blood shall be collected and analyzed. *If the subject declines or is physically incapable of consent for the second or third samples, it shall be permissible to analyze fewer samples*.

*Id.* (emphasis added).  Thus, as a general rule, in order for a breath test to meet SLD's requirements, police must obtain at least two individual samples; if the results of those samples are not within .02 grams of one another, police must obtain a third.  The only time police may take less than two samples occurs when a defendant "declines or is physically incapable of consent[ing]" to the second.  *Id.*; *Vaughn*, 2005-NMCA-076, ¶ 38.  As this Court held in *Vaughn*, "It is clear from the SLD definitions and procedures that a correctly administered breath test will consist of two samples or, in some cases, three samples." *Id.* Such a requirement for multiple samples, each within a predetermined, acceptable range of accuracy is crucial to the scientific foundation of breath testing.  Yet the requirement is subject to the limits of necessity.  For instance, if a suspect refuses to provide a second sample or is physically unable to consent to doing so, fewer than two may be used; "[t]his is in order to allow for effective prosecution of those drunk drivers who will provide only one sample." *Id.*  Thus, although the collection of two breath samples effectuates greater accuracy in the testing process, *id.*, 7.33.2.12(B)(1) NMAC nevertheless makes clear that accuracy must give way to useable data in the case of one "who, without reasonable justification, provide[s only] one sample." *Vaughn*, 2005-NMCA-076, ¶ 41.

## 2.     Inability to Blow Is Not Incapacity to Consent to a Test

**{10}**     The State argues that Defendant satisfied the requirements of 7.33.2.12(B)(1) NMAC when he provided the first breath sample.  Because of Defendant's asthma, the State

4

contends, it was impossible for him to submit a second without the use of his inhaler, thus rendering him "physically incapable of consent for the second" sample. 7.33.2.12(B)(1) NMAC. We disagree with the State. First, insufficient evidence supports this contention. The officer testified that Defendant consented to be tested.

**{11}** There is no evidence before us to support the State's contention that Defendant was unable to complete a breath test, or that the inhaler had any effect on the test device. Further, there was no evidence before the district court concerning the effect of Defendant's asthma on his performance on the breath test, although he gave one sufficient sample. The evidence shows only that the officer assumed Defendant was unable to complete the breath test and, based on that assumption, decided to terminate the test procedure.

**{12}** The State presented no evidence as to the effect of an asthma inhaler on a breath test. A key operator may be trained that an error message means a test was beyond the analytical limit of the test device. Linking that to the inhaler involves nothing more than supposition. *See e.g.*, Barry K. Logan, Sandra Distefano & Glenn A. Case, *Evaluation of the Effect of Asthma Inhalers and Nasal Decongestant Sprays on a Breath Alcohol Test*, J. Forensic Sci. 1998;43(1):197-99 (finding no effect of an Albuterol inhaler as used here on an infrared breath test device reading). Thus, the evidence shows that despite difficulty, Defendant provided one complete sample. Second and more importantly, the State's argument ignores the plain language of the SLD regulation and unreasonably confuses ability to give a breath sample with consenting to do so. Since the evidence is unequivocal that Defendant did not, without justification, fail to provide a breath sample and that he had actively consented to do so throughout the testing procedure, the regulation does not allow the use of the single sample that resulted in a breath alcohol value. *See Vaughn*, 2005-NMCA-076, ¶ 41.

**{13}** The pertinent language of 7.33.2.12(B)(1) NMAC concerns a subject's consent. Accordingly, it embraces a subject's willingness to participate in testing and not his physical capacity to complete the breath test itself. If the completion of a breath test is impeded by a willing subject who cannot blow, the Act allows the officer to direct a blood test. Section 66-8-107(A). The regulation identifies two ways consent may not be forthcoming. First, if the subject "declines" to participate in a second or third test, he has *withheld* his consent, and the police may legally use the first sample alone. 7.33.2.12(B)(1) NMAC (emphasis added). Second, when a subject is "physically *incapable of consent*," police may likewise proceed with only one sample. *Willie*, 2009-NMSC-037 (emphasis added). The regulation is specifically worded to recognize a physical impediment that would render a test subject incapable of consent and specifically does not include a physical impediment to providing a sample. As *Willie* instructs us, we will not add language to change SLD's contrary intentions. *Id.* ¶ 15. In short, we conclude that as long as a subject is willing to be tested, it is the officer's obligation under the regulation to continue the test to its required completion. 7.33.2.12(B)(1) NMAC. Thus, as long as a subject consents to testing, under the regulation it is irrelevant that he might be physically incapable of providing a useable breath sample.

5

**{14}**     The opinion of the Washington Supreme Court in *City of Kent v. Beigh*, 32 P.3d 258 (Wash. 2001), supports this interpretation and takes it one step further.  In that case, the defendant was arrested on suspicion of driving while intoxicated.  *Id.* at 259.  At the station, police took three separate breath samples, and each time, the machine registered the message "interference detected."  *Id.* (internal quotation marks omitted).  Such a message, an officer testified, indicated the presence of an alcohol-like substance disrupting the sample.  *Id.* After three such results, police concluded that the defendant "was physically unable to give a breath sample because of the interfering substance on his breath" and transported the defendant to the hospital, where a blood test was done.  *Id.*  On appeal, the city argued that the defendant's submission of an *invalid* sample amounted to a physical incapability of providing *any* sample.  *Id.* at 262.  The Supreme Court disagreed, holding that an inability to provide a valid breath sample does not necessarily indicate a physical incapability of providing any sample at all.  *Id.* at 263.  All that is required, the court concluded, is that a defendant be capable of filling the machine with air.  *Id.* at 264.  Our holding today does not require us to go that far.  Nevertheless, a similar logic applies:  physical inability to consent is not the same thing as physical inability to provide a valid sample.  Stated differently, a subject may be perfectly capable of consent yet physically incapable of providing a valid sample, and such are the facts in the present case.

**{15}**     Defendant neither declined consent nor demonstrated any physical incapability to consent.  *See* 7.33.2.12(B)(1) NMAC.  As both he and the arresting officer testified, Defendant willingly participated in and delivered two breath samples.  On both occasions, he filled the machine with air and triggered a result.  Furthermore, although Defendant stated he had asthma and requested his inhaler, and although the officer expressed worry as to whether Defendant possessed enough breath for the second test, no evidence was presented at the hearing that Defendant would have been unable to give a second sample without the use of his inhaler.  Such evidence, even if presented, would have proven only an inability to *complete* a test, not an incapacity to *consent to one*.  The language of the regulation is clear; we assume it to be intentional.  The officer prematurely ended the test cycle based on his unfounded supposition regarding both Defendant's condition and the condition of the machine.  At any rate, the regulation clearly requires subsequent samples be taken unless Defendant had refused to provide them or had become incapable of doing so.

### 3.        The Officer's Decision to Terminate the Test Was Unwarranted

**{16}**     In this case, the arresting officer decided to discontinue testing based upon his subjective determination that Defendant was incapable of completing the test, not incapable of consenting to it.  That decision was inappropriate, given the language of the regulation; 7.33.2.12(B)(1) NMAC provides a clear guideline for police conduct that does not include consideration of a subject's physical capability to provide a useable sample.  *See, e.g.*, *Sedlmayer v. Charnes*, 767 P.2d 754, 755-56 (Colo. Ct. App. 1988) (holding that where an officer believes a test subject to be physically incapable of completing the test, the officer's unilateral decision to discontinue testing is unreasonable; an officer must make an attempt to follow the guidelines); *Douglas v. Comm'r of Pub. Safety*, 385 N.W.2d 850, 853-54

(Minn. Ct. App. 1986) (holding that an incapacitated subject had not declined to consent and, therefore, that an officer's decision to discontinue testing was inappropriate, and stating that such "subjective decisions, made in good faith, are often scrutinized in subsequent legal proceedings [and] the officer must seriously consider the applicability of [the statute] to the circumstances at hand").

{17}    Nowhere does the State assert that Defendant expressed an unwillingness to be tested. At bottom, Defendant consented to both the first and second tests, and the possibility that his second sample was subsequently tainted by the use of an inhaler cannot retroactively retract that consent. 7.33.2.12(B)(1) NMAC does not require a defendant's consent to give a *good* sample; it requires only that he consent, in good faith, to give *a* sample. Yet, this interpretation should not be understood to shield a defendant who half-heartedly blows with the intent to frustrate the testing process. The State cites *Vaughn* as dispositive, but that case only illustrates the distinction between defendants who truly consent to provide samples and those who commit subterfuge. In *Vaughn*, the defendant gave a second sample but was found to have intentionally given an insufficient one. *Vaughn*, 2005-NMCA-076, ¶¶ 2, 5. Thus, the defendant in that case declined to consent, and the use of one sample was permissible. *Id.* ¶ 40. The district court in this case made no such findings, and indeed, there was no evidence at the hearing to support such a notion. The facts of this case indicate that Defendant cooperated fully with police by giving two samples, and as such, the holding in *Vaughn* is fully distinguishable. As this Court stated in *Vaughn*, the defendant gave the arresting officer "full and unequivocal consent." *Id.* ¶ 41. Any defendant who intentionally gives a bad sample has, a fortiori, withheld consent. *See id.* ¶ 40.

{18}    We also observe that it was the arresting officer, not Defendant, who allowed the use of an inhaler in the first place. Indeed, because Defendant was handcuffed, the officer held the device while Defendant used it, although the evidence does not speak to whether a double dose was proper. Furthermore, when the officer identified that the second sample was inconsistent with the first, the officer should have taken a third as required by the regulation. *See* 7.33.2.12(B)(1) NMAC (requiring a third breath sample when the difference between the first and second exceeds .02 grams). If the third sample had been tainted like the second, the officer would have borne no further duty under the regulation. Likewise, he could have required Defendant to give the second sample without the use of the inhaler, and what is more, after identifying error in the second test, he could have transported Defendant to the hospital for a blood draw. *See, e.g.*, *Vaughn*, 2005-NMCA-076, ¶ 40 (suggesting the propriety of a blood draw when a second sample cannot be taken). In this case, the officer pursued none of these reasonable alternatives and failed to comply with the regulation. When an officer has a consenting subject and a functioning machine, it is his obligation to conduct a complete breath test, and such a test must include two or three samples, as the case may require.

C.    *Gardner* Demands Strict Compliance With 7.33.2.12(B)(1) NMAC

{19}    The State argues that the requirements of 7.33.2.12(B)(1) NMAC are met when

7

officers make a good faith effort to comply. We disagree. *Gardner* clearly demonstrates the error of this position. In *Gardner*, this Court considered a case quite similar to the one before us today. Officers pulled over a vehicle for erratic driving, and upon making contact with the driver, noted signs of intoxication. 1998-NMCA-160, ¶ 3. The defendant was transported to the station for breath testing. However, during the twenty minutes prior to administering the first test, officers allowed the defendant to make an unsupervised visit to the bathroom. *Id.* When she was tested, the defendant's breath samples registered .18 grams and .19 grams, respectively. *Id.*

**{20}** The defendant moved to suppress the breath tests. She argued that under 33.3.12.12.2.1 NMAC (a previous version of 7.33.2.12(B)(1) NMAC), police failed to continuously observe her "for at least 20 minutes prior to collection of the first breath sample." *Gardner*, 1999-NMCA-160, ¶ 1. The district court disagreed. It allowed the evidence, and the defendant was convicted. *Id.* ¶ 4. This Court reversed. *Id.* ¶¶ 5, 22. The "test results were improperly admitted into evidence due to the violation . . . of the twenty-minute continuous observation period." *Id.* ¶ 5. This Court held that the waiting and observation period in the regulation "ensure[s] the accuracy of these tests," and when police do not strictly comply "with the waiting-period rule, the results of the breath . . . tests are considered sufficiently questionable as to preclude their admissibility." *Id.* ¶ 12.

**{21}** Thus, the State's argument that a good faith attempt to comply with 7.33.2.12(B)(1) NMAC must fail. The regulation clearly provides that when a second breath sample is not within .02 grams of the first, a third sample must be obtained. 7.33.2.12(B)(1) NMAC. As stated above, the only time fewer than two samples may be taken occurs when a defendant declines to consent or is physically incapable of doing so. *Id.* The officer in this case complied with neither provision, and based on the reasoning of *Gardner*, we affirm the district court's decision to exclude Defendant's breath samples.

**CONCLUSION**

**{22}** For the reasons stated above, we affirm the order of the district court granting Defendant's motion to suppress breath tests on the basis that police failed to comply with the provisions of 7.33.2.12(B)(1) NMAC.

**{23}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

8

_____
**LINDA M. VANZI, Judge**

**Topic Index for** *State v. Ybarra***, Docket No. 28,829**

| | |
|---|---|
| **CA** | **CRIMINAL PROCEDURE** |
| CA-IC | Implied Consent |
| CA-MR | Motion to Suppress |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-SU | Suppression of Evidence |
| | |
| **EV** | **EVIDENCE** |
| EV-BT | Blood/Breath Tests |