The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **July 17, 2023**

**No. A-1-CA-39633**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.

**LEONA LOUISE GARCIA PACHECO,**

    Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Jill M. Martinez, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Leland M. Churan, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Luz C. Valverde, Assistant Appellate Defender
Albuquerque, NM

for Appellant

# OPINION

**WRAY, Judge.**

{1}     Having granted the State's motion for rehearing and considered Defendant's response, we withdraw the opinion filed May 30, 2023, and substitute the following in its place. Defendant Leona Garcia Pacheco appeals the metropolitan court's conviction for driving while under the influence of intoxicating liquor (DWI), impaired to the slightest degree, contrary to NMSA 1978, Section 66-8-102(A) (2016). [1] On appeal, Defendant asserts that the metropolitan court improperly admitted and relied on a breath test result based on a single usable breath sample and that its admission was not harmless. We have previously affirmed the suppression of breath test results when an officer obtained only a single usable breath sample, based on the regulation in effect at that time. *See State v. Ybarra*, 2010-NMCA-063, ¶ 1, 148 N.M. 373, 237 P.3d 117; *see also* 7.33.2.12(B)(1) NMAC (3/14/2001) (the 2001 Regulation). The regulation relied on in *Ybarra*, however, has since been amended, and the State maintains that the current regulation, 7.33.2.15 NMAC (the Current Regulation), does not require the breath test to be excluded. We hold that the State did not lay a sufficient foundation to admit the breath test results under the

---

[1] Section 66-8-102(D)(3) was held to be unconstitutional by this Court in *State v. Storey*, 2018-NMCA-009, ¶ 32, 410 P.3d 256. Section 66-8-102(D)(3) refers to aggravated DWI, which is not at issue here, and *Storey* did not affect the constitutionality of Section 66-8-102(A).

Current Regulation, but that the error in admitting the results was harmless. We therefore affirm.

**BACKGROUND**

{2}    The criminal complaint alleged that Defendant was pulled over for swerving within the lane of traffic. A DWI officer, Deputy Fernandez, arrived and observed that Defendant had bloodshot and watery eyes and emitted an odor of alcohol. After attempting the field sobriety tests, Defendant was arrested, could provide only one usable breath alcohol sample, and was charged with aggravated DWI under Section 66-8-102(D)(1), because the single breath test result showed greater than .16 grams per 210 liters of breath. At trial, Defendant argued that the single breath test was not admissible because the Scientific Laboratory Division (SLD) standard for accuracy required two breath samples, as set forth in *Ybarra*. The metropolitan court admitted the single breath sample into evidence. Later, at the directed verdict stage, the metropolitan court dismissed the aggravated DWI charge but proceeded on the lesser included offense of DWI, impaired to the slightest degree, under Section 66-8-102(A). *See State v. Notah-Hunter*, 2005-NMCA-074, ¶ 22, 137 N.M. 597, 113 P.3d 867 (establishing that the offense of DWI impaired to the slightest degree is a lesser included offense of aggravated DWI). In this ruling, the metropolitan court noted that the breath test result was relevant to show the presence of alcohol. The

2

metropolitan court convicted Defendant of DWI, impaired to the slightest degree, and Defendant appealed.

**DISCUSSION**

{3}     Defendant argues that the metropolitan court improperly admitted and relied on the breath test results because the single breath test was unreliable, and its admission was not harmless. The State responds that the breath test was admissible under the Current Regulation and that regardless, any error was harmless. We review the admission of evidence for an abuse of discretion, *see State v. Martinez*, 2007-NMSC-025, ¶ 7, 141 N.M. 713, 160 P.3d 894, and "[t]he interpretation of an administrative regulation is a question of law that we review de novo," *Ybarra*, 2010-NMCA-063, ¶ 7 (internal quotation marks and citation omitted). We begin by considering the admission of the breath test result.

**I.      The Breath Test Was Not Admissible Under the Circumstances**

{4}     Breath test results are admissible only when the State lays an appropriate evidentiary foundation. *See Martinez*, 2007-NMSC-025, ¶ 9. "[T]o meet foundational requirements, the [s]tate does not need to show compliance with all regulations, but only with those that are accuracy-ensuring." *Id.* ¶ 11 (internal quotation marks and citation omitted). In *Ybarra*, we observed that the 2001 Regulation was an accuracy-ensuring regulation, and we therefore analyzed the regulatory requirements to evaluate the proper foundation in order to admit the

breath test. *Ybarra*, 2010-NMCA-063, ¶ 9; *see also State v. Vaughn*, 2005-NMCA-076, ¶ 38, 137 N.M. 674, 114 P.3d 354 (noting that "[i]t is reasonable to conclude that the requirement for two samples is for greater accuracy"). To support the argument that the breath test was without foundation and inadmissible because the officer did not obtain two breath test results, Defendant relies largely on *Ybarra*.

{5}     In *Ybarra*, the defendant consented to take a breath test after being arrested for DWI. 2010-NMCA-063, ¶ 2. After providing one sample, the defendant requested to use an inhaler for asthma, and the officer agreed. *Id*. ¶ 3. Two minutes later, the defendant's second sample registered an error—"Range Exceeded." *Id*. ¶ 4 (internal quotation marks omitted). The officer terminated the test at that point, determined blood testing was unnecessary, and concluded that enough evidence to establish intoxication had been gathered—including the defendant's admission to consuming alcohol and the results of the first breath test. *Id*. The district court granted the defendant's motion to suppress the breath test. *Id*. ¶ 5.

{6}     On appeal, this Court considered the 2001 Regulation, which required that "two breath samples *shall be* collected and analyzed." 7.33.2.12(B)(1) NMAC (3/14/2001) (emphasis added). Interpreting this regulation, the *Ybarra* Court explained that

> as a general rule, in order for a breath test to meet SLD's requirements, police must obtain at least two individual samples; if the results of those samples are not within .02 grams of one another, police must obtain a third. The only time police may take less than two samples occurs when

4

a defendant 'declines or is physically incapable of consenting' to the second.

2010-NMCA-063, ¶ 9 (quoting the 2001 Regulation) (alteration omitted). Because "the evidence [was] unequivocal that [the d]efendant did not, without justification, fail to provide a breath sample and that he had actively consented to do so throughout the testing procedure," this Court determined that the 2001 Regulation did "not allow the use of the single sample that resulted in a breath alcohol value." *Id.* ¶ 12. The *Ybarra* Court further concluded, again based on the 2001 Regulation, that the officer could not appropriately discontinue testing based on a subjective view that the defendant "was incapable of completing the test, not incapable of consenting to it." *Id.* ¶ 16. Because strict compliance with the 2001 Regulation was necessary, the *Ybarra* Court affirmed the suppression of the breath test because the "police failed to comply with" the regulation. *Id.* ¶ 22. In reaching this result, this Court rejected the state's argument that the 2001 Regulation's requirements were met when officers made a good faith effort to comply with the provision. *Id.* ¶¶ 19-21.

{7}     In April 2010, however, the 2001 Regulation was amended and replaced by 7.33.2.15 NMAC, which states in relevant part that "[t]he breath test operator *should make a good faith attempt* to collect and analyze at least two samples of breath." 7.33.2.15(B)(2) NMAC (emphasis added). The State contends that under the Current Regulation, Deputy Fernandez's good faith attempt to collect two samples justified the admission of the breath test result. To address the State's arguments, we analyze

5

the impact of the regulatory amendment on the collection and analyzation of breath samples.

**{8}**     Comparing the Current Regulation to the 2001 Regulation, the 2001 Regulation required that "two breath samples shall be collected and analyzed," 7.33.2.12(B)(1) NMAC (3/14/2001), while the Current Regulation requires only that an officer "should make a good faith attempt to collect and analyze at least two samples of breath," 7.33.2.15(B)(2) NMAC. Thus, under the 2001 Regulation, if the operator collected two samples but one was not readable, the operator could not satisfy the requirement to analyze two samples unless one of the exceptions applied. In the Current Regulation, the collection and analyzation of at least two samples is not mandatory—an "operator should make a good faith attempt to collect and analyze at least two samples of breath." 7.33.2.15(B)(2) NMAC. Thus, if the operator is unable to analyze two samples, but made a good faith attempt to do so, the operator complied with the Current Regulation. This Court in *Ybarra* required strict compliance with the 2001 Regulation and therefore rejected good faith compliance. *Ybarra*, 2010-NMCA-063, ¶¶ 19-21. Based on the Current Regulation, we agree with the State that generally, we can no longer discount the operator's good faith attempt to collect and analyze two samples.

**{9}**     We must also consider, however, the remainder of the accuracy ensuring requirements. Importantly, both the Current Regulation and the 2001 Regulation

direct that "[i]f the difference in the results of the two samples exceeds 0.02 grams per 210 liters (BrAC), a third sample of breath or blood shall be collected and analyzed." *See* 7.33.2.15(B)(2) NMAC; 7.33.2.12(B)(1) NMAC (3/14/2001). The State argues that because the second attempted sample registered as "---\*" and not a number, Defendant's result did not "register .02 outside of the first sample," and therefore an attempt to collect a third sample was not required. We recognize that the third sample requirement could be read in multiple ways within the practical context of obtaining breath samples—samples do not always produce numerical readings, as in this case and in *Ybarra*. The purpose of the accuracy-ensuring regulations, however, is to obtain reliable breath test results. *See Martinez*, 2007-NMSC-025, ¶¶11-12 (requiring compliance with accuracy-ensuring regulations that "clearly exist to ensure that the result of a test conducted on a breathaly[z]er is accurate"). In our view, therefore, the better reading of the third sample requirement is that two samples are inconsistent if they are not within .02 grams per 210 liters (BrAC) of each other. *See Ybarra*, 2010-NMCA-063, ¶ 18 (nothing that "when the officer identified that the second sample *was inconsistent with the first,* the officer should have taken a third as required by the regulation" (emphasis added)); *Compare* 7.33.2.15(B)(2) NMAC (including the third regulation requirement), *with* 7.33.2.12(B)(1) NMAC (3/14/2001) (same). And if the two samples are inconsistent, we read the amended regulation as requiring a good faith attempt to administer a

third test in order for the State to establish the foundation to admit a single breath test result unless the subject refused consent or was unable to consent. *See* 7.33.2.15(B)(2) NMAC. In the present case, the first sample gave a numerical reading and the second reported "----*." The two samples were therefore inconsistent and a good faith attempt to take a third sample was required.

{10} It is undisputed that Deputy Fernandez did not attempt a third breath test or a blood test. Thus, we need not decide whether Deputy Fernandez attempted in good faith to collect and analyze two samples, because he did not comply with the separate requirement to make a good faith attempt to collect and analyze a third sample. Under these circumstances, we conclude that Deputy Fernandez did not comply with the accuracy-insuring regulations so that the State could establish the necessary foundation to admit the breath test results.

**II.     The Admission of the Breath Test Results Was Harmless Error**

{11} The State nevertheless maintains that admitting the breath test was harmless error. We review this admission of evidence for nonconstitutional error, *see State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936, which "is harmless when there is no reasonable probability the error affected the verdict," *State v. Ocon*, 2021-NMCA-032, ¶ 29, 493 P.3d 448 (internal quotation marks and citation omitted). We assess "the potential impact of an error on the outcome" by reviewing "all of the circumstances surrounding the error," which include "the source of the error, the

emphasis placed on the error, evidence of the defendant's guilt apart from the error, the importance of the erroneously admitted evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative." *Id.* (alteration, internal quotation marks, and citation omitted). Defendant contends that the circumstances of this case, including the metropolitan court's reliance on the breath test results and the other evidence of guilt, demonstrate that the error of admitting the breath test results was not harmless. We turn to consider all of the circumstances surrounding the error, focusing on "the central inquiry of whether [the] error was likely to have affected the [judge]'s verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 42, 275 P.3d 110.

{12} The metropolitan court admitted the breath test results, but subsequently granted a directed verdict as to the aggravated charge. The metropolitan court observed, however, that the breath card would be admissible to establish the presence of alcohol, in order to support a conclusion that Defendant was impaired to the slightest degree. *See State v. Franklin*, 2020-NMCA-016, ¶ 10, 460 P.3d 69 (observing that breath alcohol tests have been held to be relevant to demonstrate the presence of alcohol in the impaired to the slightest degree context). During closing argument and rebuttal, the State mentioned the breath test result. The metropolitan court, however, did not mention the result when it announced its guilty verdict.

Instead, the metropolitan court relied on other evidence and explained the Defendant's inability to safely operate a vehicle

> was demonstrated by the testimony regarding [Defendant's] bloodshot, watery eyes, [Defendant's] slurred speech, the odor of alcohol, [Defendant's] failure to follow instructions on the field sobriety tests, [Defendant's] conducting on the few field sobriety tests that were administered, [Defendant's] words and [Defendant's] actions, [Defendant's] admission to drinking an alcoholic beverage, the presence of an open container, [and Defendant's] bad driving.

The metropolitan court's explanation gives us confidence that the erroneously admitted breath test result did not affect the verdict. *See Tollardo*, 2012-NMSC-008, ¶ 42.

{13} Defendant argues that the metropolitan court inappropriately relied on the inadmissible breath test results, because the scientific evidence carried "an air of objective reliability," the metropolitan court pointed to the breath test results during the directed verdict proceeding, and the record does not clearly demonstrate that the results were not a factor in the verdict. Defendant relies on *Franklin* and *State v. Gardner*, 1998-NMCA-160, 126 N.M. 125, 967 P.2d 465, to support these arguments. In *Franklin*, we considered harmless error in relation to inadmissible blood test results. 2020-NMCA-016, ¶ 9. The DWI conviction was "based on [the] defendant's impairment to the slightest degree" and though the blood test result was relevant to show the presence of alcohol, the record showed no indication that the district court did not also consider the testimony about the blood test results. *Id.* ¶ 10.

10

This was particularly so because the district court announced the results of the test during its verdict and noted that the result of the blood test was concerning. *Id.* This Court therefore could not conclude that the district court did not rely on the inadmissible blood alcohol test results in making its final decision and held that "any error that may exist with respect to the admission of the blood test results was not harmless." *Id.* In *Gardner*, we held that the numerical breath test results were improperly admitted into evidence and concluded that "when the only scientific evidence presented at trial was admitted in error, the court cannot say that the effect is harmless." 1998-NMCA-160, ¶¶ 20-21.

{14} Unlike in *Franklin*, in which the district court announced the blood alcohol test results during its verdict and expressed concern, the metropolitan court in the present case did not rely on—or even mention—the breath card when delivering the verdict. [2] While, like in *Gardner*, the breath tests results were the "only scientific evidence presented at trial," 1998-NMCA-160, ¶ 21, the metropolitan court considered Defendant's breath test results at most to demonstrate the presence of alcohol. In that light, the breath test results were cumulative of Defendant's

---

[2]The recording of the district court's verdict is not complete and cuts off before the district court completed giving its ruling. The log notes for the proceeding indicate that twelve seconds are missing from the end of the recording. Defendant does not argue that the metropolitan court referenced the breath test results in the missing portion of the recording, and so we rely with confidence on the record before us.

11

admission to drinking alcohol. *See Ocon*, 2021-NMCA-032, ¶¶ 29, 31 (considering the cumulative nature of the evidence in the harmless error analysis and concluding that the erroneously admitted evidence was cumulative of the defendant's admission).

{15}     Although the metropolitan court was aware of the breath test result, the court did not reference the breath test while delivering the verdict and any reliance on the breath test was limited to the presence of alcohol, which was cumulative of Defendant's admission. The other evidence supported the verdict that Defendant was impaired to the slightest degree. For these reasons, we conclude there is no reasonable probability that the admission of the breath test result affected the verdict and its admission was harmless.

**CONCLUSION**

{16}     Although the single breath test result was improperly admitted under the Current Regulation, the error was harmless, and we affirm.

{17}     **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**JANE B. YOHALEM, Judge**

12