1998-NMCA-076

964 P.2d 117

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Charles Lee JONES, Defendant–Appellant.**

**No. 18515.**

Court of Appeals of New Mexico.

Feb. 20, 1998.

Tom Udall, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Plaintiff-Appellee.

John W. Higgins, Higgins, Mescall & Lee, Albuquerque, for Defendant-Appellant.

## OPINION

FLORES, Judge.

{1} Defendant appeals the district court's affirmance of his metropolitan court conviction of driving while intoxicated (DWI). On appeal, Defendant argues that the district court erred by: (1) finding that there was probable cause for his arrest; (2) failing to suppress the State's evidence of breath alcohol; (3) finding that Defendant was properly and accurately notified of his right to an independent sobriety test by someone of his own choosing; and (4) determining that NMSA 1978, § 66-8-109 (1993) does not allow an individual arrested for DWI the right to have a person of his own choosing draw his blood. In addition, Defendant argues that the failure of the police to follow Section 66-8-109(B) violated his right to due process.

{2} Although we hold that the district court erred in its interpretation of the statute, we nonetheless affirm Defendant's conviction because the warrantless arrest was valid and because he was not prejudiced by the violation of his statutory rights.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{3} On March 25, 1995, Defendant rear-ended another vehicle which had stopped to allow a third vehicle to make an illegal u-turn. Shortly after the accident, Albuquerque Police Department (APD) Officer Trujillo came upon the accident scene. The officer stopped and spoke with Defendant, who had a strong odor of alcohol on his breath, bloodshot and watery eyes, and slurred speech. Defendant swayed while talking with the officer, and told the officer that he had had two beers. Officer Trujillo had Defendant perform three field sobriety tests—the eye gaze nystagmus test, the one leg stand, and the heel to toe test. Defendant failed all three tests. Based on his observations of Defendant, and Defendant's failure of the field sobriety tests, Officer Trujillo arrested Defendant for aggravated DWI and "following too closely."

{4} Officer Trujillo transported Defendant to the Bernalillo County Detention Center (BCDC), observed the twenty-minute waiting period, and took Defendant into the breath-testing room. Officer Trujillo then read to Defendant an Implied Consent Act advisory, which was posted on the wall. The language of the advisory did not precisely mirror the language of the statute. See § 66-8-109(B). The officer administered two breath tests in immediate succession. The intoxilyzer measured Defendant's breath alcohol level at .17 on each of the two tests administered, showing that Defendant was intoxicated.

{5} Once the tests were completed, Defendant asked to speak to an attorney and asked for an independent blood test. Officer Trujillo requested a blood technician on contract with APD to perform the blood test at BCDC. Defendant also requested that he be allowed to call his own doctor because he wanted someone he knew to perform the blood test upon him. At no time did officer Trujillo allow Defendant to use the telephone. Officer Trujillo made no calls on Defendant's behalf.

{6} When the APD blood technician arrived, Defendant refused to allow the blood technician to draw his blood. Officer Trujillo informed Defendant that it was APD policy to provide defendants with qualified doctors, nurses, or blood technicians to draw the blood and that defendants could take the blood sample to a person of their own choosing for the analysis.

{7} Defendant was convicted of DWI, first offense, in metropolitan court. The metropolitan court dismissed the "aggravated" portion of the DWI charge, in part because the State failed to afford Defendant an opportunity to have a person of his choosing draw his blood. The metropolitan court also dismissed the "following too closely" charge. Defendant appealed to the district court. The district court affirmed and Defendant appealed.

## II. *DISCUSSION*

### A. *There Was Probable Cause for the Arrest*

 {8} A police officer may arrest without a warrant any person who is present at the scene of a motor vehicle accident if the arresting officer has "reasonable grounds, based on personal investigation which may include information from eyewitnesses, to believe the person arrested has committed a crime." NMSA 1978, §§ 66–8–125(A)(1) & 66–8–125(B); *see State v. Galloway*, 116 N.M. 8, 11, 859 P.2d 476, 479 (Ct.App.1993) ("An officer has probable cause when facts and circumstances within the officer's knowledge, or on which the officer has reasonably trustworthy information, are sufficient to warrant someone of reasonable caution to

believe that an offense has been or is being committed."); *State v. Goss*, 111 N.M. 530, 534, 807 P.2d 228, 232 (Ct.App.1991) (probable cause is more than suspicion but less than certainty).

{9} Whether probable cause exists is a mixed question of law and fact. *See id.; State v. Anderson*, 107 N.M. 165, 168–69, 754 P.2d 542, 545–46 (Ct.App.1988). We review legal conclusions de novo, but defer to the trial court's findings of fact. Our review of factual determinations is limited to determining whether there was substantial evidence to justify a warrantless arrest. *Cf. State v. Wisdom*, 110 N.M. 772, 774, 800 P.2d 206, 208 (Ct.App.1990) (factual determinations underlying the issuance of search warrants are reviewed for substantial evidence), *overruled on other grounds by State v. Barker*, 114 N.M. 589, 594, 844 P.2d 839, 844 (Ct.App. 1992).

{10} In light of the facts in this case and our case law on probable cause and DWI, we hold that Officer Trujillo had reasonable grounds to believe that Defendant had been driving while intoxicated. *See State v. Ruiz*, 120 N.M. 534, 540, 903 P.2d 845, 851 (Ct.App. 1995) (probable cause exists where police observed car weaving, smelled strong odor of alcohol, saw glassy eyes, and where defendant was unable to perform field sobriety tests); *State v. Trujillo*, 85 N.M. 208, 211, 510 P.2d 1079, 1082 (Ct.App.1973) (probable cause existed where defendant had strong smell of liquor on breath immediately after auto accident occurred, and where there was a half-empty bottle of wine in defendant's car). Here, Officer Trujillo came upon an accident scene in which the vehicle that Defendant had been driving had hit the vehicle immediately in front of him. Officer Trujillo smelled a strong odor of alcohol on Defendant's breath, observed Defendant's watery and bloodshot eyes, and heard Defendant's slurred speech. Defendant swayed during his conversation with Officer Trujillo and told the officer that he had had two beers. In addition, Officer Trujillo administered three field sobriety tests, each of which Defendant was unable to complete successfully. These facts are substantial evidence that there was probable cause to believe that Defendant had

been driving while intoxicated. Thus, we affirm the district court's holding that the arrest was legal.

## B. *Breath Alcohol Test Results*

{11} Defendant's remaining arguments all concern the district court's affirmance of the trial court's refusal to suppress the breath alcohol test results. Defendant argues that the results of the breath alcohol test should have been suppressed for three independent reasons: (1) because the test was administered incident to an unlawful arrest; (2) because the police officer failed to notify him of his right to an independent chemical test; and (3) because the police violated his statutory right to an independent test by a person of his choosing.

### 1. *Trial Court's Failure to Suppress the Breath Alcohol Test Results Was Not Error Because the Arrest Was Lawful*

{12} Defendant relies on *State v. Richerson*, 87 N.M. 437, 441, 535 P.2d 644, 648 (Ct.App.1975) (trial court erred by admitting results of blood alcohol test when the blood was taken before a lawful arrest was made), to argue that the results of sobriety tests are inadmissible if not administered incident to a lawful arrest. We need not address this argument, however, because we hold that the police arrested Defendant lawfully. We also hold that the trial court did not err by admitting the State's evidence of breath alcohol content.

### 2. *Police Substantially Complied with the Statute's Notice Requirements*

{13} Defendant argues that the State's test results should have been suppressed because the police officer did not adequately notify him of his right to an independent chemical test. Before considering the merits of Defendant's argument, we first address the State's concern that this issue is moot because Defendant asserted the right protected by Section 66–8–109 when he asked that his own doctor be allowed to draw his blood.

### a. *Mootness*

{14} The State argues that the adequacy of the notice became irrelevant when Defendant did what the statute entitled him to do—request a doctor of his choosing to perform the blood test. We find this argument to be without merit. Further, we address the issue on its merits because this issue is likely to recur and because a substantial public interest will be served by deciding the issue. *See Mowrer v. Rusk*, 95 N.M. 48, 51–52, 618 P.2d 886, 889–90 (1980) ("A court should continue a cause ... if the court discerns a likelihood of recurrence of the same issue, generally in the framework of a 'recurring' controversy and 'public interest' in maintaining the appeal.").

{15} In determining whether the requisite degree of public interest exists to prevent dismissal on mootness grounds, we consider among other factors, the public or private nature of the question before the court, the desirability of an authoritative determination for future guidance of public officers, and the likelihood that the question will recur in the future. *See id.* at 51, 618 P.2d at 889. Here, the question involves both public and private concerns. The right at stake is private: the legislature granted individuals the opportunity to arrange an independent chemical test by someone of their own choosing. The public interest at stake is our community interest in having the police comply with statutory requirements. An authoritative determination on what notice is required by the statute is highly desirable because the law enforcement divisions across the state may be providing different degrees of notice to those arrested for DWI. A determination on the notice requirement will guide law enforcement officers statewide and thereby foster uniformity and fairness in the protection of the private right. Finally, without such a determination, this problem will recur because the APD reads a standard notice form to those arrested for DWI that does not include language indicating that the person to perform the test should be of the defendant's "own choosing." For these reasons, we hold that the issue is not moot.

b. *Merits: The Notice Adequately Informed Defendant of his Rights*

{16} Section 66–8–109(B) states:

The person tested shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician of his own choosing to perform a chemical test in addition to any test performed at the direction of a law enforcement officer.

{17} Officer Trujillo recited the following notice to Defendant: "You have the right to an opportunity to arrange for a physician, licensed nurse, laboratory technician or technologist who is employed by a hospital or a physician to perform an additional chemical test." Defendant argues that the notice given is fatally flawed because it did not notify him that the additional test could be performed by a qualified person "of his own choosing." We disagree. The notice given by Officer Trujillo substantially complied with the requirements of the statute and the lack of the specific phrase Defendant emphasizes did not prejudice Defendant in any way.

{18} In order to reach this conclusion, we first determine whether strict compliance with the statute was necessary to achieve the goal of the legislature. "To determine whether strict compliance is required in this factual setting, we must ascertain the intent of the legislature and analyze whether this intent would be frustrated by anything less than strict compliance." *Green Valley Mobile Home Park v. Mulvaney*, 1996–NMSC–037, ¶ 11, 121 N.M. 817, 918 P.2d 1317. Once we determine that substantial compliance may suffice, we must consider whether the notice read by the police officer substantially complied with the law. *See Lane v. Lane*, 1996–NMCA–023, ¶ 17, 121 N.M. 414, 912 P.2d 290 (" '[A] court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted and accomplishes the reasonable objectives of the statute.' ") (quoting *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 485, 650 P.2d 3, 7 (Ct.App.1982)).

{19} Here, the purpose of this subsection of the statute is to inform the person arrested of his or her right to arrange to have an independent chemical test performed by a person of his or her own choosing. Strict compliance with the statute is not required because words other than those used in the statute can convey the information required by the statute. That is what occurred in this case. Although Officer Trujillo did not say the words "of your own choosing" to Defendant, that message was inherent in the notice given. By telling Defendant that he was entitled to arrange an independent test by a physician, licensed nurse, laboratory technician, or technologist who is employed by a hospital or a physician, it was clear that Defendant could choose who performed the test. Moreover, nothing in the notice given would lead Defendant to believe that he could not choose who performed the additional test. Because the purpose of the statute was not frustrated in any way by the notice given, we hold that the notice substantially complied with the statute and that there was no error.

{20} We note that this outcome is consistent with our own law on substantial compliance, *see, e.g., Green Valley Mobile Home Park*, 1996–NMSC–037, ¶ 11, 121 N.M. 817, 918 P.2d 1317, as well as the law of other jurisdictions regarding this very type of notice statute. "Often, a court will hold that the police officer substantially complied with the notification provisions of the statute, thus avoiding suppression of evidence or dismissal of the case." 1 Richard E. Erwin, *Defense of Drunk Driving Cases* § 5.04, at 5–21 (3d ed.1997); *see also Hegler v. State*, 286 Ark. 215, 691 S.W.2d 129, 130 (1985) (failure to include right to an additional breath test in notice of right to additional blood or urine test was not fatal even though the statute allowed defendant to choose any kind of test; substantial compliance with statute is all that is required for result of test to be admissible); *State v. Richardson*, 81 Wash.2d 111, 499 P.2d 1264, 1266–67 (1972) (en banc) (notice substantially complied with statute when it conveyed that defendant had right to an independent test administered by a qualified person of his or her own choosing, even

though defendant may have mistakenly believed that the only person qualified under the statute was a police officer). *Cf. State v. Harrison,* 216 Ga.App. 325, 453 S.E.2d 820, 820–21 (1995) (notice held not in substantial compliance with statute because the notice failed to indicate in any way that defendant could choose a qualified person to administer a second test).

{21} Having found substantial compliance, we feel constrained to add that it would clearly be better practice to include an explicit statement regarding the arrestee's right to choose the independent tester. Including the message explicitly would help reduce the need for the courts to consider each notice given under the statute for substantial compliance under the facts of that case.

3. *Section 66–8–109 Allows Defendants A Reasonable Opportunity to Contact a Person of Their choosing to Draw and Analyze Their Blood*

{22} The plain language of the statute grants those arrested on DWI charges the right to an independent chemical test. *See* § 66–8–109(B) & (E). We hold that this statute grants arrestees charged with DWI not only the right to choose who analyzes their blood sample, but also the right to choose who draws their blood. In particular, we hold that the language in subsections 66–8–109(B) ("of his own choosing") and (E) (*"performed upon him* by a person of his own choosing") (emphasis added) encompasses both what is done to the arrestee's body, as well as what is done with the blood once it has been drawn.

{23} We find the State's and the district court's analysis of the statutory language flawed. Both would have us take the word "test" out of its immediate context. If we were to do so, we would fail to consider the express language ("performed upon him") that defines the contours of the test. Well-established principles of statutory construction discourage this type of decontextualized reading of a statute. *See* NMSA 1978, § 12–2A–2 (1997) (formerly § 12–2–2(A) (1973) (the meaning of an undefined word is determined by its context) *see also State v. Russell,* 113 N.M. 121, 124, 823 P.2d 921, 924 (Ct.App.1991) ("The usual rules of statutory construction would require us to read the words in context and to include in the relevant context as much of the statute as is necessary to understand the legislature's purpose."). Were we to follow the reading of the statute advocated by the State and adopted by the district court, we would not be giving effect to the entire text of the statute. Thus, we conclude that the statute entitles those arrested on charges of DWI to choose who will perform the independent chemical test upon them by drawing the blood, as well as to choose who analyzes the blood sample.

a. *Statute Requires Only a Reasonable Opportunity to Arrange for an Additional Test*

{24} Reading the entire statute, however, we conclude that our statute does not guarantee the arrestee an additional test will be performed, but only that the arrestee will be given a reasonable opportunity to arrange for an additional test. *See* § 66–8–109(B). Consistent with other states, we hold that the statute entitles arrestees to a reasonable opportunity to contact a qualified person of their choosing who may be able to perform the test. *See generally,* Erwin, *supra,* § 5.01, at 5–4 & n. 4 (identifying numerous state statutes that specify that the arrestee's inability to obtain an additional test performed by a person of their choosing will not result in the inadmissibility of the state's evidence). Our statute does not guarantee that the test will actually be performed by the person contacted.

{25} In this case it is clear that Defendant was denied a reasonable opportunity to contact his doctor. Defendant asked to call his doctor, but Officer Trujillo denied this request and denied Defendant access to a telephone. Without deciding whether anything more than access to a telephone will ever be required, in this instance we hold that by denying Defendant access to a telephone the police denied Defendant a reasonable opportunity to contact someone of his choosing to perform the blood test upon him.

{26} The district court held and the State now argues that this reading of the statute will lead to absurd results because of the nature of DWI evidence. Because alcohol dissipates from the blood quickly, the State contends that allowing defendants to choose who will draw their blood will result in untrustworthy evidence because of delays in the arrival of the person chosen to perform the test. This, however, is beside the point. Even in those cases where the blood cannot be drawn for a relatively long period of time, defendant is still entitled by statute to have that blood drawn by a person of his or her own choosing. What defendants risk in such cases is that the weight and value of their evidence will be diminished. The probative value of a defendant's evidence can be attacked by the state on cross-examination and in closing argument. The fact that a defendant's evidence may be of diminished value does not overcome the fact that the legislature created a right to a test by a person of defendant's own choosing.

{27} Moreover, enforcing the defendant's right to choose who performs the test does not diminish the state's ability to prosecute these crimes. Nothing in the statute requires the state to delay its own test until the arrestee's "person" arrives. The two tests need not be performed at the same time. Thus, the state's legitimate interest in obtaining and preserving blood alcohol evidence is not compromised in any way.

{28} Finally, the State argues that allowing defendants to choose who draws their blood will become so prohibitively expensive to law enforcement agencies that they will be unable to remove intoxicated drivers from our roads. *See* § 66–8–109(E) ("If a person exercises his right ... to have a chemical test performed upon him by a person of his own choosing, the cost of that test shall be paid by the law enforcement agency...."). In so arguing, the State essentially asks us to step out of our judicial role and to assume the legislature's function. We will not, however, disturb the considered judgment of the legislature, which, in Section 66–8–109, has balanced the public's safety from drunk drivers against the rights of those arrested for DWI, and has allocated the costs therein. It

is not the role of the courts to assess whether the legislature's clearly stated policy is efficacious or cost-effective. Rather, when the legislature speaks clearly, it is the court's duty to give effect to the legislature's policies, regardless of their cost. The State's argument regarding the purposes and costs of the Implied Consent Act, NMSA 1978, §§ 66–8–105 through 112 (1978), should be addressed to the legislature, not to the courts.

b. *Defendant Is Not Entitled to a Further Remedy Because He Was Not Prejudiced by the Statutory Violation*

{29} Although we hold that the police violated the statute by failing to provide Defendant a reasonable opportunity to contact a person of his choosing to perform the blood test, we also hold that, on these particular facts, Defendant was not prejudiced by this violation. *See State v. Bearly,* 112 N.M. 50, 53–54, 811 P.2d 83, 86–87 (Ct.App.1991) (violation of defendant's statutory right does not require setting aside the conviction without a showing of prejudice). Although the statutory right violated in this case differs from that in *Bearly,* the principle is the same. We will not presume that prejudice results from the statutory violation. *Id.*

{30} Here, nothing in the facts demonstrates a reasonable potential that the outcome of this case would have been different had Defendant been able to call a qualified person of his own choosing to draw his blood. The evidence that Defendant was driving while intoxicated was considerable and was sufficient to convict him: he failed three separate field sobriety tests; his breath had a strong smell of alcohol; his speech was slurred; his eyes were watery and bloodshot; he admitted having two alcoholic drinks; and his breath alcohol content measured .17 on two separate tests. Moreover, because Defendant's breath alcohol content was significantly over the legal limit, *see* NMSA 1978, § 66–8–102(C) (1993), and because "breath testing is generally regarded as highly reliable," *Bearly,* 112 N.M. at 54, 811 P.2d at 87, it is unlikely that a blood alcohol test by a person of Defendant's own choosing would have shown that Defendant was not driving while intoxicated.

**564**

{31} In this connection, we note that the trial court dismissed the "aggravated" portion of the DWI charge based, in part, on the failure to allow Defendant the opportunity to have his blood drawn by a person of his own choosing. Thus, this is not a case where Defendant is just over the limit and additional testing could well put him just under the limit. *Cf. State v. Lovato,* 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct.App.1980) (reversing conviction and requiring suppression of blood test evidence where state did not preserve it and state's test results were right at legal limit, thereby establishing prejudice). Rather, this is a case where Defendant's own test would have had to have shown an error of 100% in the State's test. Defendant presented neither evidence nor argument with reference to authorities concerning the likelihood that his own test would have demonstrated an error of such magnitude. Thus, we hold that Defendant has failed to show that he was prejudiced by the violation of his statutory right to an independent chemical test in any way that would not have been cured by the remedy the trial court applied. Accordingly, Defendant is not entitled to any further remedy for the statutory violation. Because Defendant is not entitled to any further remedy, we need not consider whether dismissal of the charges or suppression of the blood alcohol evidence would be the appropriate remedy under different factual situations for a violation of Section 66–8–109.

 {32} Defendant also contends that the statutory violation led to a violation of his due process rights. He contends that the appropriate remedy should be that applied in cases of lost or destroyed evidence. *See generally Lovato,* 94 N.M. at 782, 617 P.2d at 171. However, the trial court has discretion in determining the remedy to be applied in cases of lost or destroyed evidence, *see State v. Riggs,* 114 N.M. 358, 361, 838 P.2d 975, 978 (1992), and we have long been committed to the rule that remedies for constitutional violations should be tailored to the injury suffered, *see State v. Smith,* 110 N.M. 534, 535, 797 P.2d 984, 985 (Ct.App.1990); *State v. Pedroncelli,* 97 N.M. 190, 192, 637 P.2d 1245, 1247 (Ct.App.1981). Under the circumstances of this case, for the same reasons

that the trial court's remedy was sufficient as a matter of statutory law, it was also sufficient as a matter of constitutional law. In other words, any possible prejudice suffered was cured by dismissing the "aggravated" portion of the DWI charge.

## III. *CONCLUSION*

{33} We hold that: Defendant's arrest was lawful; the APD substantially complied with the notice requirements of Section 66–8–109(B); Section 66–8–109 allows an individual arrested for DWI an opportunity to arrange for a person of his or her choosing to both draw and analyze a blood sample; Defendant's statutory right to choose who draws his blood was violated; and Defendant failed to show that he was prejudiced by such a violation. For these reasons, we affirm Defendant's DWI conviction.

{34} **IT IS SO ORDERED.**

PICKARD and BUSTAMANTE, JJ., concur.