This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STEPHEN RYAN,**

 Appellant-Respondent,

v.              **NO. 30,450**

**STATE OF NEW MEXICO TAXATION and REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION,**

 Appellee-Petitioner.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

Gary K. King, Attorney General
Julia Belles, Special Assistant Attorney General
Santa Fe, NM

for Appellee

Sanchez, Mowrer & Desiderio, P.C.
Frederick M. Mowrer
Albuquerque, NM

Patrick J. Griebel, P.C.
James Burns
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

The State of New Mexico Taxation and Revenue Department, Motor Vehicle Division (MVD) filed a writ of certiorari asking this Court to review the district court's order reversing the administrative revocation of the driver's license of Respondent Stephen Ryan (Driver). We granted the petition, and we now reverse the district court's order.

**BACKGROUND**

The facts are not in dispute. On the evening of June 28, 2009, Sergeant Kent was patrolling an area of Rio Rancho when he spotted Driver's car as it crossed the right edge line of the road into a bike path and then swerved back to the left, crossing the dotted line on the left side of the lane marker. Kent initiated a traffic stop. After he pulled over, Driver inadvertently backed his car toward the officer's, requiring Kent to put his vehicle in reverse to avoid being hit. Kent then approached Driver's vehicle and noted that Driver's eyes were watery and bloodshot, and he detected an odor of alcohol coming from the vehicle. Kent also testified that Driver seemed "out of sorts" and that his speech was slurred.

During field sobriety tests (FSTs), Driver stated at times that he could not hear or understand the instructions being given. Driver said he also experienced anxiety and panic at that point, manifesting itself in a constricted field of vision, difficulty hearing, and a shortness of breath. Driver also had a problem with balance during the FSTs. Kent placed Driver under arrest at 2:10 a.m. Police records show that four minutes earlier, at 2:06 a.m., a call was made for a tow truck, but Kent testified that he did not make that call and that he placed Driver under arrest based on Driver's performance on the FSTs. Driver was taken to the police station and was asked at 2:25 a.m. if he would submit to a blood-alcohol breath test. He refused, and Kent read Driver the implied consent warning informing him that his license could be revoked based on his failure to consent to the breath test. Driver then requested the opportunity to arrange a blood test in the alternative; Kent agreed and provided Driver with a space that contained a telephone and phone book. Around 3:45 a.m., Driver stated a desire to take the breath test, more than an hour after he had refused it. Kent turned down the request.

An MVD hearing officer issued an eight-page, single-spaced statement of findings. The hearing officer determined that the call for the tow truck did not constitute an unlawful arrest. The hearing officer further found that Driver failed to demonstrate that he cured his first refusal to take the breath test by either his request

for an alternative blood test or by agreeing to the breath test more than an hour after refusing the first one. Driver appealed the decision to the district court. The district court reversed based on its determination that (1) Kent's request for the tow truck made the arrest unlawful and (2) Driver recanted his refusal to take the breath test by agreeing to be tested eighty minutes after being read the implied-consent warning by Kent. The district court determined that substantial evidence did not exist for the hearing officer's revocation order. This appeal by MVD followed.

**DISCUSSION**

**I.      Standard of Review**

We apply the standard of review used by the district court. *See Romero v. Rio Arriba Cnty. Comm'rs*, 2007-NMCA-004, ¶ 12, 140 N.M. 848, 149 P.3d 945 ("In reviewing a decision of an administrative agency, we apply the same statutorily-defined standard of review applied by the district court."). "On review, it is for the [district] court to determine only whether reasonable grounds exist for revocation or denial of the person's license or privilege to drive based on the record of the administrative proceeding." NMSA 1978, § 66-8-112(H) (2003). We are to determine whether "there was sufficient evidence to uphold the administrative agency's decision." *Groendyke Transp., Inc. v. State Corp. Comm'n*, 101 N.M. 470, 476, 684 P.2d 1135, 1141 (1984). "It is not the function of the [district] court to retry

the case" during its appellate review of an administrative hearing. *Id.* "The standard of review for appeals from administrative agencies is whether substantial evidence in the record as a whole supports the agency's decision." *Dep't of Transp., Motor Vehicle Div. v. Romero*, 106 N.M. 657, 659, 748 P.2d 30, 32 (Ct. App. 1987). "Substantial evidence is evidence that a reasonable mind would recognize as adequate to support the conclusions reached by a fact-finder." *N.M. Mining Ass'n v. N.M. Water Quality Control Comm'n*, 2007-NMCA-010, ¶ 30, 141 N.M. 41, 150 P.3d 991. In reviewing an administrative decision for substantial evidence, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters & Int'l Ass'n of Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. The district court was obligated to defer to the hearing officer's factual and credibility determinations. *See State Bd. of Psychologist Exam'rs v. Land*, 2003-NMCA-034, ¶ 5, 133 N.M. 362, 62 P.3d 1244. "Where a difference or conflict in the evidence exists, a court should not substitute its opinion for that of the administrative agency." *Romero*, 106 N.M. at 659, 748 P.2d at 32. We presume that an agency's determination is correct. *See id.*

**II.     The Hearing Officer Did Not Err in Finding That the Arrest of Driver Was Lawful**

        MVD first argues that the hearing officer's finding of a lawful arrest is

supported by substantial evidence and that the district court erred in finding that Driver was arrested once a request for a tow truck was made. Whether Driver was lawfully arrested is a key issue because one of the elements MVD must prove in order to revoke a driver's license for refusal to take a breath test is that the person was arrested. *See* § 66-8-112(F)(2). Driver contends that the arrest was not lawful because it was preceded by an unlawful detainer or seizure. He argues that once a tow truck was called, he was seized and under arrest before police officers had established probable cause to do so.

An arrest occurs whenever a police officer restrains an individual's freedom to leave the scene. *See State v. Harbison*, 2007-NMSC-016, ¶ 11, 141 N.M. 392, 156 P.3d 30. "Our courts have held that a restraint on a person's freedom . . . can result either from the application of physical force or by a showing of authority." *Id.* "When determining whether a person is seized[,] we consider all of the circumstances surrounding the incident in order to determine whether a reasonable person would have believed that he [or she] was not free to leave." *State v. Jason L.*, 2000-NMSC-018, ¶ 15, 129 N.M. 119, 2 P.3d 856 (second alteration in original) (internal quotation marks and citation omitted). In determining whether a reasonable person would feel free to leave, we look at the conduct of police, the "person of the individual citizen," and the physical surroundings at the scene. *Id.*

In the case before us, we must determine whether the district court was correct in determining that the calling of a tow truck resulted in the premature seizure of Driver, rendering his arrest unlawful. We begin with Driver's legal arguments for his position that the calling for a tow truck "is proof of a pre-investigation determination of arrest." Driver provides one legal citation for the proposition that the calling of a tow truck constitutes an arrest: *Boone v. State*, 105 N.M. 223, 227, 731 P.2d 366, 370 (1986) ("A person is arrested when his freedom of action is restricted by a police officer and he is subject to the control of the officer."), *limited on other grounds by State v. Sims*, 2010-NMSC-027, ¶ 12, 148 N.M. 330, 236 P.3d 642. However, *Boone* said nothing about the seizure implications of a police call for a tow truck; it merely held that it is unlawful for an intoxicated person to steer a vehicle being towed by a motor vehicle. *See id.* at 226, 731 P.2d at 369. Driver cites to no authority, and we have found none, for the idea that a call for a tow truck without the knowledge of the arresting officer or the eventual arrestee constitutes a seizure such that it rises to the level of an arrest requiring probable cause. Driver also cites to *State v. Jones*, 2002-NMCA-019, 131 N.M. 586, 40 P.3d 1030, to support his contention that "*any* tow request before completion of all the standard [FSTs] makes the arrest unlawful." *Jones*, which was abrogated by *State v. Bomboy*, 2008-NMSC-029, 144 N.M. 151, 184 P.3d 1045, stands for the general proposition that warrantless seizures are

presumed unreasonable, *Jones*, 2002-NMCA-019, ¶ 11, but our Supreme Court, in that case dealing with evidentiary issues, was silent on whether the calling of a tow truck constitutes a seizure. *See Grygorwicz v. Trujillo*, 2006-NMCA-089, ¶ 9, 140 N.M. 129, 140 P.3d 550 (stating that cases do not qualify as authority for propositions not considered). We conclude that there is little legal basis supporting Driver's position, and we turn to the evidence on the issue.

The district court determined that Driver's arrest was unlawful based on its finding that Kent "requested a tow truck prior to arresting" Driver at 2:10 a.m. This contrasts with the findings of the hearing officer, who determined that there was no evidence presented that Kent requested the tow truck after his stop of Driver's vehicle. Additionally, the hearing officer noted that there was no evidence that Kent placed Driver under arrest because the tow truck had been called.

The district court cited the following portion of the record reflecting this exchange between Driver's attorney and Kent:

[Attorney]: . . . And there . . . would not have been a need to call for a tow truck prior to [2:10] because you had not made such a determination?

[Kent]: That's correct. Yes, sir.

[Attorney]: And in this particular instance, it's true, isn't it, that the tow truck . . . had been called at [2:06]?

[Kent]: I didn't refer to the CAD call, so if it's in the CAD call, that would be correct, sir.

[Attorney]: And that's four minutes before you made the decision to

8

arrest, correct?

[Kent]: . . . [Y]eah, that would be four minutes before the arrest.

Nowhere in that exchange does Kent say he called for a tow truck or knew, prior to the 2:10 arrest of Driver, that one had been called; he merely gave deference to the police department's call records in acknowledging that a tow truck apparently had been called by someone. It appears the district court reweighed and reinterpreted the evidence and came to a conclusion not supported by the record. In contrast, the hearing officer's finding that there was no evidence that Kent called for a tow truck is an accurate reflection of the record. Consequently, we conclude that the evidence does not support the district court's conclusion regarding the calling of the tow truck.

Driver further argues that he was unable to leave the scene and that "his *means* . . . of leaving the scene were effectively taken from him before the completion of the DWI investigation." Driver points to nothing in the record to show that he was detained simply as a consequence of an unknown person calling for a tow truck during the FSTs and four minutes before the arrest was effectuated. Because there is no evidence that Kent made the call for a tow truck or that either he or Driver knew that one had been requested, there is no basis for Driver's argument.

The focus of our inquiry is whether Kent had reasonable suspicion to conduct a traffic stop and, later, probable cause when he placed Driver under arrest at 2:10 a.m. "A reasonable suspicion is a particularized suspicion, based on all the

circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Rivas*, 2007-NMCA-020, ¶ 7, 141 N.M. 87, 150 P.3d 1037 (internal quotation marks and citation omitted). "Probable cause exists when the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been, or is being, committed." *State v. Duffy*, 1998-NMSC-014, ¶ 69, 126 N.M. 132, 967 P.2d 807 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ___ N.M. ___, 275 P.3d 110. In the case before us, Kent testified that he observed Driver's vehicle driving erratically, to the point where the officer had to move his own vehicle to avoid getting hit. Kent stopped the vehicle and noticed that Driver had bloodshot watery eyes, and he noticed the smell of alcohol in Driver's vehicle. Kent commenced FSTs, at which time he noticed that Driver's speech was slurred. Driver did not successfully complete the tests. The hearing officer below determined that by this point in the investigation, which itself was supported by reasonable suspicion, probable cause existed to arrest Driver, making it irrelevant that someone called a tow truck. *See, e.g.*, *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 12, 143 N.M. 455, 176 P.3d 1187 (holding that the odor of alcohol, lack of balance at the vehicle, and failure to satisfactorily perform field sobriety tests supported an objectively reasonable belief

that the defendant had been driving while intoxicated, and thus constituted probable cause to arrest); *State v. Jones*, 1998-NMCA-076, ¶ 10, 125 N.M. 556, 964 P.2d 117 (concluding that the officer had probable cause to arrest for DWI when the officer noticed bloodshot and watery eyes, slurred speech, and a strong odor of alcohol, when the defendant admitted to having drunk two beers, swayed when he was talking to the officer, and failed the field sobriety tests); *State v. Ruiz*, 120 N.M. 534, 535, 540, 903 P.2d 845, 846, 851 (Ct. App. 1995) (holding that probable cause existed where police observed the defendant speeding and weaving, where the defendant admitted to having been drinking, when the officer noticed bloodshot and watery eyes, slurred speech, and a smell of alcohol, and when the results of the field sobriety tests were mixed), *abrogated on other grounds by State v. Martinez*, 2007-NMSC-025, ¶ 21, 141 N.M. 713, 160 P.3d 894.

We conclude that substantial evidence existed for the hearing officer to find that the request of a tow truck by an unknown person did not constitute a seizure of Driver minutes before his arrest. Nothing in the record indicates that Driver felt that he was being detained specifically because a tow truck had been called. Additionally, the record supports the determination that Kent had reasonable suspicion to conduct a traffic stop and also probable cause to arrest Driver. Thus, the evidence was sufficient to show that Driver was lawfully arrested and subject to the revocation of his license

11

under the statute for refusing the breath test. It was error for the district court to reweigh the evidence below and to find otherwise. *See Romero*, 106 N.M. at 660, 748 P.2d at 33 ("It is not the proper function of either this court or the district court to reweigh the evidence and to substitute its judgment for that of the hearing officer, so long as the agency decision is supported by the record.").

**III.    Driver Did Not Cure His Refusal to Take the Breath Test**

The hearing officer also found that Driver refused to take a breath test when requested to do so by Kent. MVD argues that the district court erred in reversing that decision and in finding that Driver made up for his refusal to take a breath test by finally agreeing to do so eighty minutes after his original refusal. Driver argues that immediately after he refused the breath test, Kent agreed to allow him to arrange a blood test but did not inform him that such an alternative test would not cure his refusal to take the breath test; thus, Driver reasons, his initial refusal was swiftly recanted as required by New Mexico law.

New Mexico, like all states, has sought to combat the evils of drunk driving by enacting the Implied Consent Act, by which anyone who operates a motor vehicle "is deemed to have given consent to a chemical test to determine alcoholic content of his breath, blood, or urine." *In re McCain*, 84 N.M. 657, 660, 506 P.2d 1204, 1207 (1973); *see also* NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007).

12

"One purpose is to deter driving while intoxicated. Another purpose is to aid in discovering and removing from the highways the intoxicated driver. These purposes are valid and well within the proper scope of the state's police powers." *McCain*, 84 N.M. at 660, 506 P.2d at 1207. The State has a "compelling public interest in eradicating DWI occurrences and the potentially deadly consequences" of the crime. *City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 13, 148 N.M. 708, 242 P.3d 275. Such legislation has been upheld in the face of due process challenges. *See McCain*, 84 N.M. at 660-661, 506 P.2d at 1207-08.

New Mexico's statute provides:

> Any person who operates a motor vehicle within this state shall be deemed to have given consent, subject to the provisions of the Implied Consent Act . . ., to chemical tests of his breath or blood or both, approved by the scientific laboratory division of the department of health pursuant to the provisions of [NMSA 1978,] Section 24-1-22 [(2003)] as determined by a law enforcement officer, or for the purpose of determining the drug or alcohol content of his blood if arrested for any offense arising out of the acts alleged to have been committed while the person was driving a motor vehicle while under the influence of an intoxicating liquor or drug.

Section 66-8-107(A). The test is to be conducted at the behest of the police officer: "A test of blood or breath or both . . . shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle within this state while under the influence of intoxicating liquor or drug." Section 66-8-107(B). The statute gives the MVD the authority to

13

revoke a driver's license if a person refuses to consent to chemical testing:

> The department, upon receipt of a statement signed under penalty of perjury from a law enforcement officer stating the officer's reasonable grounds to believe the arrested person had been driving a motor vehicle within this state while under the influence of intoxicating liquor or drugs and that, upon request, the person refused to submit to a chemical test after being advised that failure to submit could result in revocation of the person's privilege to drive, shall revoke the person's New Mexico driver's license or any nonresident operating privilege for a period of one year or until all conditions for license reinstatement are met, whichever is later.

Section 66-8-111(B). Thus, if a person refuses to submit to a test and has been advised that failure to do so could lead to revocation of the person's driver's license, MVD shall revoke their license for at least a year.

We have previously stated that an intoxicated driver may not negotiate with the officer the type of test to be administered; rather, the driver must submit to whatever form of chemical test requested by the officer. *See Fugere v. Taxation & Revenue Dep't, Motor Vehicle Div.*, 120 N.M. 29, 32, 897 P.2d 216, 219 (Ct. App. 1995). In *Fugere*, the driver demanded more than once on taking a breath test on a machine at the station, while the officer insisted that the test be administered using the machine in the officer's vehicle. *Id.* We rejected the driver's argument, stating:

> The Act provides that a motorist consents to "chemical tests of his breath or blood, *as determined by a law enforcement officer*." To grant Fugere's contention would render this mandatory provision meaningless.
>
> Fugere's refusal to take Officer Romero's test, accompanied by his

14

consent to be tested on the machine at the police station, was, at best, a conditional consent. A conditional consent is a refusal to take the test.

*Id.* at 34, 897 P.2d at 221 (citation omitted). We concluded: "By failing to submit to the breath test requested by Officer Romero, Fugere's actions constituted a refusal under the Act, irrespective of his offer to take the test on the machine at the police station." *Id.* at 35, 897 P.2d at 222. As in *Fugere*, Driver's refusal to take the breath test as directed by Kent and his offer to instead arrange a blood test at best constitute a conditional consent, which fails to qualify as submitting to a chemical test.

The district court, upon review, found that Driver cured his refusal with his subsequent consent to take the breath test requested by Kent more than an hour after his initial refusal. However, a driver's reconsideration of a refusal must be relatively immediate and "never more than a matter of minutes." *In re Suazo*, 117 N.M. 785, 793, 877 P.2d 1088, 1096 (1994). The driver's change of mind and acceptance of the offer to submit to the test must be akin to the driver realizing that he or she had made "a rash, unconsidered choice." *Fugere*, 120 N.M. at 35, 897 P.2d 222. The New Mexico Supreme Court established a five-factor test to determine whether a driver cured an initial refusal:

A motorist will be permitted to rescind his initial refusal

> (1) when he does so before the elapse of the reasonable length of time it would take to understand the consequences of his refusal;

15

(2) when such a test would still be accurate;

(3) when testing equipment or facilities are still readily available;

(4) when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and

(5) when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

*Suazo*, 117 N.M. at 793, 877 P.2d at 1096. The first prong serves the purpose of "offering the flustered motorist a fair chance to understand his or her rights." *Id.*

In the case before us, Driver's recantation came eighty minutes after the initial refusal, well beyond the "reasonable length of time" defined in *Suazo* as "never more than a matter of minutes." And no matter how promptly Driver offered to take a blood test as an alternative, such an action does not cure his refusal to submit to the breath test. Thus, there was a legal basis for the hearing officer to determine that Driver refused to submit to a breath test, and the district court's conclusion is inconsistent with New Mexico law.

Finally, Driver argues that he was not given a reasonable opportunity to obtain an alternative test. The right to obtain an alternative test is statutory:

The person tested shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional[,] or practical nurse or laboratory technician or

16

technologist who is employed by a hospital or physician of his own choosing to perform a chemical test in addition to any test performed at the direction of a law enforcement officer.

Section 66-8-109(B). In *Jones*, 1998-NMCA-076, ¶ 24, we stated: "[O]ur statute does not guarantee the arrestee an additional test will be performed, but only that the arrestee will be given a reasonable opportunity to arrange for an additional test."

In the case before us, the hearing officer found that Driver failed to show that he qualifies under the statute because, having refused the breath test, he was not a "person tested" as articulated by the wording of the statute. We agree with the hearing officer's interpretation of the statute's plain language. Further, even if Driver were covered by the statute he must show that Kent failed to provide him with a reasonable opportunity to secure an alternative test. In *Jones*, we found that a reasonable opportunity was not afforded because the motorist was denied access to a telephone to call his doctor. *Id.* ¶ 25. While *Jones* stopped short of saying that providing access to a telephone would be sufficient, we conclude that Kent's provision of a secluded space that contained a telephone and phone book for Driver to use adequately distinguishes the facts of this case from the facts in *Jones*.

In sum, we conclude that the district court erred in overturning the hearing officer's finding that Driver refused to take the breath test and failed to cure that refusal.

17

**CONCLUSION**

For the foregoing reasons, we reverse the district court and remand with directions to enter an order affirming the decision of MVD.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**