The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: May 12, 2025

**No. A-1-CA-41848**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**SERGIO NIETO LADINO,**

Defendant-Appellee.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Rosemary Cosegrove-Aguilar, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Peter James O'Connor, Assistant Solicitor General
Albuquerque, NM

for Appellant

The Law Office of Scott M. Davidson, Ph.D, Esq.
Scott M. Davidson
Albuquerque, NM

for Appellee

**OPINION**

**WRAY, Judge.**

{1}     This appeal concerns the methods that a law enforcement officer must use to advise a person arrested for driving under the influence of intoxicating liquor or drugs (DWI) of the arrestee's statutory right under NMSA 1978, Section 66-8-109(B) (1993) of the Implied Consent Act (ICA). *See* NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019). Section 66-8-109(B) requires that an arrestee be advised of the opportunity to arrange for an independent chemical test (the ICA advisory).[1] The present case involves Defendant Sergio Nieto Ladino, a Spanish speaker, who was stopped and arrested by an English-speaking officer. The Bernalillo County Metropolitan Court concluded that the ICA required the arresting officer to recite the ICA advisory to Defendant in Spanish. Based on this conclusion, the metropolitan court granted Defendant's motion to suppress evidence of his breath alcohol test results and dismissed the charges for DWI, contrary to NMSA 1978, Section 66-8-102(C)(1) (2016), and failure to maintain traffic lane, contrary to NMSA 1978, Section 66-7-317(A) (1978). On appeal, the State argues that the

---

[1]The parties and the metropolitan court used the term "ICAA," which appears to have referred to a standardized advisory provided by law enforcement to arrestees. That advisory is not in our record verbatim. Our use of the term "ICA advisory" refers not to the contents of any particular advisory but specifically to the statutory requirement that law enforcement officers "advise[]" arrestees of the right to an independent chemical test.

arresting officer substantially complied with the ICA by directing Defendant to read an ICA advisory poster that was printed in Spanish.

{2}     We conclude that the ICA requires a law enforcement officer, based on the totality of the circumstances, to use reasonable methods that would reasonably convey to a DWI arrestee the existence of the right to arrange for an independent chemical test. Applying that standard to the present case, we reverse and remand.

**BACKGROUND**

{3}     We begin with factual background drawn from the metropolitan court's factual findings, which the parties do not dispute on appeal. A New Mexico State Police officer stopped Defendant's vehicle after observing the vehicle fail to maintain its lane "on more than one occasion" on Interstate 40 in Albuquerque, New Mexico. During the traffic stop, the officer observed that Defendant had bloodshot, watery eyes and noticed that Defendant smelled of alcohol. Although the contact between the officer and Defendant was complicated by a language barrier, the officer elicited an admission from Defendant that he had consumed a beer before driving. The officer then instructed Defendant, using English and physical demonstration, about how to perform a series of field sobriety tests. After Defendant performed the field sobriety tests, the officer placed Defendant under arrest for DWI.

{4}     Before transporting Defendant to a New Mexico State Police station to conduct a chemical breath test, the officer read an ICA advisory to Defendant aloud

2

in English. At the station, the officer showed Defendant an ICA advisory poster printed in Spanish. After each of these two attempts to advise Defendant of his statutory right under Section 66-8-109(B) of the ICA, the officer asked Defendant if he understood, and Defendant said, "Yes." The officer did not read the ICA advisory to Defendant aloud in Spanish.

{5} Before trial, Defendant filed two motions to dismiss—one for lack of reasonable suspicion to perform the traffic stop and one for lack of probable cause to arrest Defendant for DWI—as well as a motion to suppress evidence of the results of the breath tests administered by the arresting officer. In the motion to suppress, Defendant argued that because the officer spoke to Defendant in English, Defendant "had no way of knowing of his right to an independent test" and the ICA advisory "was not properly conveyed."

{6} The metropolitan court held an evidentiary hearing on Defendant's three pretrial motions. At the hearing, the officer testified under oath that Defendant agreed to take a breath test after reading the ICA advisory poster printed in Spanish and that the officer administered two breath tests using an Intoxilyzer 8000. After receiving the officer's testimony and admitting into evidence video footage from the officer's dashboard and body cameras depicting the circumstances prior to and

during the traffic stop,[2] the metropolitan court denied Defendant's motions to dismiss for lack of reasonable suspicion and probable cause. The metropolitan court nevertheless granted Defendant's motion to suppress and dismissed the charges, concluding that the ICA "was not complied with" because "Defendant was not afforded the opportunity to hear the ICA [advisory] recited to him in Spanish." The State appeals.

**DISCUSSION**

{7}     This appeal requires both statutory interpretation and evaluation of whether as a matter of law, the pertinent facts satisfy a legal standard. As noted above, the metropolitan court concluded that based on the undisputed facts, Section 66-8-109(B) was not satisfied. We review de novo the metropolitan court's conclusion that the officer did not comply with Section 66-8-109(B) of the ICA. *See State v. Smith*, 2019-NMCA-027, ¶ 5, 458 P.3d 613. To do this, "we endeavor to discern the intent of the Legislature in adopting a statute." *State v. Maxwell*, 2016-NMCA-061, ¶ 8, 376 P.3d 882. We begin by examining "the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different

---

[2]The record includes video footage from the officer's body camera taken during the interaction between the officer and Defendant at the police station. Although the State relies on this footage and cites to it as "State's Ex. 1C," we decline to review Exhibit 1C because the record does not show that the exhibit was offered or admitted into evidence.

[meaning] was intended." *State v. Chakerian*, 2018-NMSC-019, ¶ 10, 458 P.3d 372 (internal quotation marks and citation omitted).

**I.      The ICA and Law Enforcement's Role in the ICA Advisory**

{8}      The Implied Consent Act, in relevant part, addresses law enforcement's administration of chemical tests, to which any person operating a vehicle within the state is deemed to have given consent.[3] *See* §§ 66-8-107(A), -109(B). In particular, Section 66-8-109(B) states the following:

> The person tested shall be advised by the law enforcement officer of the person's right to be given an opportunity to arrange for a physician, licensed professional or practical nurse or laboratory technician or technologist who is employed by a hospital or physician of [their] own choosing to perform a chemical test in addition to any test performed at the direction of a law enforcement officer.

New Mexico courts have previously addressed the specificity of the information that an officer must convey in order to comply with Section 66-8-109(B). *See, e.g.*, *State v. Myers*, 1975-NMCA-055, ¶¶ 21-22, 88 N.M. 16, 536 P.2d 280 (addressing whether a previous version of the statute required law enforcement "to warn the suspect" of "the consequences of refusing a blood test");[4] *State v. Jones*, 1998-

---

[3]Defendant's arguments on appeal characterize the breath test as a search and raise the issue of whether Defendant's consent to such a search was voluntary. Consent to search, however, is not at issue in this context. Based on Section 66-8-107, Defendant's consent to the chemical testing is implied because he operated a motor vehicle in New Mexico and the officer had probable cause to arrest him for DWI. We therefore do not address Defendant's arguments in this respect.

[4]*Myers* considered a version of the ICA that did not include the ICA advisory requirement. *See* 1975-NMCA-055, ¶ 17 (referencing the previous statute, which

NMCA-076, ¶ 17, 125 N.M. 556, 964 P.2d 117 (considering the adequacy of an advisory that did not inform an arrestee that the independent test "could be performed by a qualified person of [the arrestee's] own choosing" (internal quotation marks and citation omitted)); *State v. Duarte*, 2007-NMCA-012, ¶¶ 21, 23, 140 N.M. 930, 149 P.3d 1027 (affirming the use of a standardized advisory card issued by the New Mexico Scientific Laboratory Division to advise the defendant and determining that the card contained "the statement that a subject has the right to an independent test"). Unaddressed, however, has been the *manner* in which that information must be conveyed.

{9} As this case illustrates, the statutory phrase "shall be advised by the law enforcement officer," § 66-8-109(B), can be interpreted as requiring different methods of communication under different circumstances. In its order, the metropolitan court first looked to the standard practice of "arresting officers in Bernalillo County," which was to read an advisory aloud and to direct the arrestee to read an advisory poster affixed to the wall. Based on this local practice of providing two advisories, the metropolitan court determined that the arresting officer did not comply with Section 66-8-109(B) of the ICA because the officer did not read

---

simply provided "'an opportunity'" for an independent chemical test (quoting NMSA 1953, § 64-22-2.9 (1971); *see also City of Farmington v. Joseph*, 1978-NMCA-011, ¶ 10, 91 N.M. 414, 575 P.2d 104 (same). The Legislature included the ICA advisory requirement effective in 1994. *See* § 66-8-109(B).

6

an ICA advisory to Defendant in Spanish. On appeal, the State does not appear to dispute that Section 66-8-109(B)'s mandate to "advise[]" requires something more than simply reading an advisory to a non-English speaker in English. Instead, the State argues that Section 66-8-109(B) does not require the officer to read an advisory aloud but mandates only that the officer make "reasonable efforts to inform Defendant of his rights." Because the statutory term "advise[]" could be reasonably understood in these different ways, the ICA is in this respect, ambiguous. *See State v. Adams*, 2022-NMSC-008, ¶ 10, 503 P.3d 1130 ("A statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses." (internal quotation marks and citation omitted)). We must, therefore, look beyond the plain text to determine the Legislature's intent. *See id.* ¶ 15. Ultimately, we agree with the State that in this circumstance the manner by which the ICA advisory was provided to Defendant is consistent with the purpose and structure of the ICA and its prior interpretation by New Mexico courts.

{10} In order to further the purpose of "finding and removing intoxicated drivers from the roadways," *State v. Garnenez*, 2015-NMCA-022, ¶ 9, 344 P.3d 1054, the ICA addresses, in relevant part, the implied consent of drivers to submit to chemical testing, some of the consequences for refusing to submit, and the duties of law enforcement in obtaining and administering chemical tests. *See* §§ 66-8-105 to -112. The first substantive provision of the ICA explains that "[a]ny person who operates

a motor vehicle within this state *shall be deemed to have given consent . . .* to chemical tests of [their] breath." Section 66-8-107(A) (emphasis added).[5] As such, a chemical breath test "shall be administered" if a law enforcement officer has "reasonable grounds to believe the person to have been driving a motor vehicle within this state while under the influence of intoxicating liquor or drug." Section 66-8-107(B). This implied consent may be withdrawn, though refusal to submit to chemical testing carries significant consequences and may be overridden by the issuance of a search warrant. *See* § 66-8-111(A) (providing that if a person refuses a chemical test, "none shall be administered" but that a "search warrant authorizing chemical tests" may issue based on probable cause); § 66-8-111(B) (explaining the circumstances in which refusal can cause revocation of a driver's license); *see also* § 66-8-102(D)(3) (describing aggravated DWI based on refusal to submit to chemical testing). In relation to these consequences, "following the arrest of a person on suspicion of DWI," Section 66-8-109(B) imposes "two explicit duties" on law enforcement, only one of which is relevant to the present case, "that the arresting officer advise the arrestee of [their] right to an opportunity to arrange for an

---

[5]After the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. 438 (2016), the ICA "can no longer provide that a driver impliedly consents to a blood draw." *State v. Vargas*, 2017-NMSC-029, ¶ 22, 404 P.3d 416. We note that the Legislature has not yet amended the ICA to reflect these holdings.

additional test." *Chakerian*, 2018-NMSC-019, ¶ 18.[6] The purpose of Section 66-8-109(B) is "to inform the person arrested of [their] right to arrange to have an independent chemical test performed by a person of [their] own choosing." *Jones*, 1998-NMCA-076, ¶ 19.

{11} Provided that this purpose is not frustrated, this Court has explained that substantial, and not strict, compliance may satisfy Section 66-8-109(B)'s advisory requirement. *See Jones*, 1998-NMCA-076, ¶ 19. The *Jones* defendant argued that the arresting officer did not comply with Section 66-8-109(B) because the officer did not use the words "of your own choosing" when providing an ICA advisory. 1998-NMCA-076, ¶ 19 (internal quotation marks omitted). This Court considered the officer's words and determined that the required information "was inherent in the notice given," that "it was clear" that the defendant "could choose who performed the test," and that the advisory would not have led the defendant "to believe that he could not choose who performed the additional test." *Id.* As a result, the ICA advisory given did not frustrate the purpose of Section 66-8-109(B) and "the notice substantially complied with the statute." *Jones*, 1998-NMCA-076, ¶ 19.

---

[6]Section 66-8-111(B) further imposes a duty on law enforcement to "advise[] that failure to submit [to chemical testing] could result in revocation of the person's privilege to drive," although the ICA includes no advisory requirements regarding the potential criminal consequences of refusing a chemical test. *See* § 66-8-102(D)(3); *State v. Kanikaynar*, 1997-NMCA-036, ¶ 7 ("New Mexico's implied consent statute does not contain language requiring that a driver must be warned of *all* the consequences of [the] refusal to submit to testing." (emphasis added)).

9

{12} The State points to *Jones* to argue broadly that the arresting officer in this case substantially complied with Section 66-8-109(B) because "the statute merely required the arresting officer to inform Defendant of his rights, which he did." The State does not truly appear to advocate for a standard so stark that a law enforcement officer need only "inform" an arrestee without regard for the circumstances. Instead, as we noted, the State acknowledges that the arresting officer was required to make "reasonable efforts to inform Defendant of his rights" and that the ICA advisory must "effectively convey the rights afforded" by the statute. On appeal, the State returns often to the circumstances confronted by the arresting officer to argue that the advisory provided to Defendant satisfied the statutory requirement. We agree with the State's tacit acknowledgement that law enforcement must use reasonable methods under the circumstances that would reasonably convey the ICA advisory to an arrestee.

{13} New Mexico courts that have considered other aspects of compliance with Section 66-8-109(B) have reached similar conclusions. This Court has held that law enforcement must give an arrestee "a reasonable opportunity to arrange for an additional [chemical] test." *Jones*, 1998-NMCA-076, ¶ 24. Whether law enforcement afforded an arrestee a reasonable opportunity to obtain an alternate test is "[b]ased on the totality of the circumstances." *Chakerian*, 2018-NMSC-019, ¶ 22. Similarly, whether an arrestee "affirmatively asked for an independent chemical

test" is also considered based on the totality of the circumstances. *Smith*, 2019-NMCA-027, ¶ 8. Along those lines, even in *Jones*, this Court looked to what the officer said and how a defendant could have interpreted those words. *See* 1998-NMCA-076, ¶ 19. Thus, after credibility determinations are made and all the admissible evidence is weighed, the totality of the circumstances must be viewed through the lens of a reasonable officer to determine whether law enforcement made "reasonable efforts" to comply with Section 66-8-102(B). *See State v. Anaya*, 2012-NMCA-094, ¶ 29, 287 P.3d 956 (accepting the historical facts as true and reviewing de novo the application of the law to the facts); *see also id.* ¶¶ 30-33 (noting that the district court considered testimony from the officer and the defendant and determining that substantial evidence supported a district court's findings regarding compliance with the ICA).

{14}     As the State notes, this view is in line with cases from other jurisdictions. Over twenty years ago, the Wisconsin Supreme Court considered the statutory advisory requirements for a law enforcement officer who arrested a hearing-impaired user of American Sign Language (ASL) for operating a motor vehicle while under the influence of an intoxicant. *See State v. Piddington*, 2001 WI App 24, ¶ 1, 241 Wis. 2d 754, 623 N.W.2d 528. The *Piddington* Court determined that the statute was ambiguous, turned to indicators of legislative intent, and considered "how to best ensure that law enforcement officers comply with the legislature's mandate requiring

11

that apprehended drivers are informed about their rights and responsibilities under the implied consent law." *Id.* ¶¶ 16, 18. Even though the statute required that drivers be "orally informed" of the implied consent warnings, *id.* ¶ 15, the *Piddington* Court concluded that "the legislature intended that law enforcement officers inform accused drivers of the implied consent warnings, and that duty is met by using those methods which are reasonable and reasonably convey those warnings under the circumstances at the time of the arrest." *Id.* ¶ 23. Such an approach, the Court emphasized, "only ensures that barriers which may affect the arresting officer's ability to reasonably convey the implied consent warnings to an accused driver, such as one with impaired hearing, are taken into account and accommodated as much as is reasonable under the circumstances." *Id.* ¶ 28. The Court ultimately concluded that "the implied consent warnings were reasonably conveyed to [the defendant] through reasonable methods," because the arresting officer located another officer "who was conversational in sign language" but "was not an ASL-certified sign language interpreter" to communicate with the defendant and observed the defendant read the warnings to himself. *Id.* ¶¶ 31-32.

{15} Following the *Piddington* Court's approach, the Supreme Court of Iowa "adopt[ed] a standard which requires an officer under the circumstances facing [them] at the time of the arrest to utilize methods which are reasonable and would reasonably convey Iowa's implied consent warnings." *State v. Garcia*, 756 N.W.2d

12

216, 218, 222 (Iowa 2008). The *Garcia* Court considered circumstances in which "[n]o attempts were made to communicate the implied consent advisory" to a Spanish-speaker in Spanish. *Id.* at 219. In reaching its conclusion that the arresting officer nevertheless "utilized reasonable methods to convey the implied consent warnings," the *Garcia* Court observed that (1) the officer "testified that she could understand [the defendant] and he seemed to understand her"; (2) "[t]here were numerous conversations between [the officer] and [the defendant] with little apparent difficulty in communicating"; (3) the defendant "signed the implied consent form, and he did not indicate that he did not understand"; and (4) "[i]t was not until the motion to suppress that his lack of understanding was raised." *Id.* at 223.

{16} We similarly conclude that law enforcement must use reasonable methods that would reasonably convey the ICA advisory. The metropolitan court interpreted Section 66-8-109(B) as requiring the arresting officer to provide Defendant "the opportunity to hear the [ICA advisory] recited to him in Spanish." While in some instances, the totality of the circumstances may require both oral and written notice, Section 66-8-109(B) does not explicitly contain such a requirement. *See State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579 ("We will not read into a statute language which is not there, especially when it makes sense as it is written."). Neither the plain language of Section 66-8-109(B) nor the Legislature's

purpose in enacting that provision support a requirement that a law enforcement officer must convey the ICA advisory in a particular manner regardless of the circumstances.

**{17}** Under the present circumstances, the officer used reasonable methods to reasonably convey the ICA advisory. The officer recited the ICA advisory in English, directed Defendant to a Spanish-language poster, and testified that Defendant appeared to read and understand the contents of the poster. While these steps may not be sufficient in every case, in the present case, the undisputed facts support a conclusion that the officer acted reasonably and satisfied the ICA's requirements.

**CONCLUSION**

**{18}** We reverse and remand to the metropolitan court for further proceedings consistent with this opinion.

**{19}** **IT IS SO ORDERED.**

_____
**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**GERALD E. BACA, Judge**

14